**UNITED STATES of America**

v.

**Edward J. GURNEY.**

**No. 74–122–CR–J–Y.**

United States District Court, M. D. Florida, Orlando Division.

July 23, 1976.

Vincent Alto, Trial Atty., Dept. of Justice, Washington, D.C., for the Government.

C. Harris Dittmar, Jacksonville, Fla., for defendant.

## ORDER

GEORGE C. YOUNG, Chief Judge.

Pursuant to due notice this case came on before the Court for a pre-trial conference. Arguments on several motions recently filed by defense counsel were to be the first item for consideration, but Government counsel announced that he would like to make an oral request for a ruling by the Court on certain material and important matters. It appearing to this Court that a present, prompt disposition of the issues sought to be raised by Government counsel would be in the best interests of judicial administration of this case, Government counsel was permitted to present and argue the request for a ruling by the Court.[1]

## THE INDICTMENT AND PRIOR TRIAL

On July 10, 1974, the indictment in this case was returned by a grand jury in Jacksonville, Florida, charging the defendant, Edward J. Gurney and six others in eleven counts with various alleged violations of federal law. All of the defendants were charged in Count One with a violation of Title 18, United States Code, § 371 by conspiring to violate Sections 201, 203 and 2(a) of Title 18, United States Code, to defraud the United States in various and sundry ways, as specifically alleged in that count. Defendant Edward J. Gurney was also charged in Counts Two, Three, Eight, Nine, Ten and Eleven; defendant Earl M. Crittenden was charged in Counts Two and Three as an aider and abettor; defendant James L. Groot was charged in Counts Four, Five and Six and defendant Joseph Bastien was charged in Count Seven.

Two of the defendants (Crittenden and Anderson) were severed from the case prior to trial, pursuant to negotiations with the Government in return for their testimony. The trial commenced on February 24, 1975 before another judge of this Court. During the trial another defendant (Groot) entered a plea of guilty and the trial ceased as to him, leaving only the charges against defendants Gurney, Bastien, Swiger and Koontz for consideration by the jury. On August 4, 1975, after more than five months of trial, the jury returned a verdict of not guilty as to Koontz and Swiger as to the conspiracy count (One) which was the only count in which those defendants were charged. The jury also returned a verdict of not guilty as to the defendant Bastien as to Count Seven and a not guilty verdict as to the defendant Gurney as to Counts Two, Three, Nine, Ten and Eleven. The jury was unable to reach a verdict as to defendant Bastien as to Count One and as to Gurney as to Counts One and Eight; as to the unresolved counts, the trial judge declared a mistrial.

The case was set for further trial as to defendant Bastien on the charge contained in Count One and as to the defendant Gurney as to the charges contained in Counts One and Eight. On March 8, 1976, the Government filed a motion to dismiss Count

---

[1]. A decision adverse to the government may be appealed by the government at this stage, but after the commencement of trial, the government has no such option. 18 U.S.C. § 3731 provides in part:

"An appeal by the United States shall lie to a court of appeals from a decision, or order of a district court . . . excluding evidence . . . in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment . . . .."

One against the defendant Bastien on the grounds that a review of the evidence caused the Government to conclude that the constitutional principle of collateral estoppel would prohibit the reintroduction of most of the evidence against the defendant so the remaining evidence would "leave less than a viable case". The motion was granted on March 8, 1976, so that the only remaining defendant was and is Edward J. Gurney.

## ORAL REQUEST BY GOVERNMENT FOR RULING

Both in oral argument and in its motion to dismiss the charges against the defendant Bastien, government counsel has recognized the applicability of the constitutional principle of collateral estoppel to the future trial of the remaining charges against the defendant Gurney. Because that defendant was acquitted on five of the seven charges against him, the issue exists as to what specific evidence will be excludable in the presentation of the government's case on the remaining charges.

Counts Two, Three and Nine, upon which the defendant Gurney was found not guilty by the jury, were concerned with an alleged transaction wherein the defendant Gurney was supposed to receive a free condominium in Vero Beach, Florida from John Dye, allegedly in return for improper influence with officials of the Department of Housing and Urban Development. Government counsel has conceded that the evidence adduced by the government in behalf of the charges contained in Counts Two, Three and Nine at the last trial is barred by the doctrine of collateral estoppel so that the admissibility of such evidence is not now an issue before this Court.

The only counts then remaining upon which the defendant was previously found not guilty by the jury are Counts Ten and Eleven. Government counsel has orally sought a ruling by this Court as to whether certain evidence previously introduced by the government in support of the charges contained in Counts Ten and Eleven would be inadmissible at the next trial because of the doctrine of collateral estoppel.

As to Count Ten, the government submitted the issue without argument and defense counsel announced that if the government had no argument he did not wish to make one either.

As to Count Eleven, oral arguments were heard on behalf of each of the parties.

## COLLATERAL ESTOPPEL

In *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469, the Supreme Court of the United States held that the doctrine of collateral estoppel is part of the Fifth Amendment double jeopardy prohibition. There, at 443, 90 S.Ct. at 1194, the Court held: "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." In *Wingate v. Wainwright,* 464 F.2d 209 (1972), the Fifth Circuit Court of Appeals significantly expanded the *Ashe* holding by concluding, at 213:

"We do not perceive any meaningful difference in the quality of 'jeopardy' to which a defendant is again subjected when the state attempts to prove his guilt by relitigating a settled fact issue which depends upon whether the relitigated issue is one of 'ultimate' fact or merely an 'evidentiary' fact in the second prosecution. In both instances the state is attempting to prove the defendant guilty of an offense other than the one of which he was acquitted. In both instances the relitigated proof is offered to prove some element of the second offense. In both instances the defendant is forced to defend again against charges or factual allegations which he overcame in the earlier trial. We are in agreement with Judge Friendly's conclusion in *United States vs. Kramer,* 289 F.2d 909 (2nd Cir. 1961).

'The Government is free, within the limits set by the Fifth Amendment . . . to charge an acquitted defendant with other crimes claimed to arise from the same related conduct;

but it may not prove the new charge by asserting facts necessarily determined against it on the first trial, no matter how unreasonable the Government may consider that determination to be.' "

■ So, while the Government may charge, try and convict a defendant with more than one charge growing out of the same transaction, it may not in a second trial relitigate an issue of either ultimate fact or evidentiary fact upon which the defendant was acquitted in an earlier trial. It is on the basis of the foregoing law that we now turn our attention to the issues raised by Government counsel's request for a ruling.

### COUNT TEN

Count Ten of the indictment charges as follows:

"1. On or about the 13th day of May, 1974, in the Middle District of Florida, the defendant, EDWARD J. GURNEY, having duly taken an oath that he would testify truthfully and while testifying in a proceeding before the Grand Jury, a Grand Jury of the United States, duly empanelled and sworn in the United States District Court for the Middle District of Florida, did knowingly make false material declarations as hereinafter set forth.

2. At the time and place alleged, the Grand Jury of the United States District Court for the Middle District of Florida was conducting an investigation in conjunction with the United States Attorney's Office for the Middle District of Florida and the Federal Bureau of Investigation to determine whether violations of Title 18, United States Code, Sections 371, 201, 203 and of other statutes of the United States had been committed in the Middle District of Florida and elsewhere, and to identify the individual or individuals who had committed, caused the commission of, and conspired to commit such violations.

3. It was material to the said investigation that the Grand Jury ascertain whether or not pressure had been exerted upon officials of the Department of Housing and Urban Development to influence the decisions of those officials with respect to their official activities. It was further material to the said investigation that the Grand Jury ascertain the identity and motives of the individual or individuals who were responsible for, participated in, and had knowledge of the exertion of unlawful pressure upon officials of the Department of Housing and Urban Development, and related matters. It was further material to the said investigation that the Grand Jury ascertain whether or not monies or other things of value were paid by persons on whose behalf said influence was exerted and whether or not monies or other things of value were accepted by persons who exerted said influence or who were responsible for or knowledgeable of such.

4. At the time and place alleged, EDWARD J. GURNEY, the defendant, appearing as a witness, contrary to such oath, knowingly made declarations with respect to material matter which he did not believe to be true, to wit:

In that he stated he told his law partners after June 1971, not to accept clients doing business with the United States, whereas in truth and fact as he then and there well knew and believed he told his law partner Stewart Gilman to accept clients doing business with the United States.

That the said declarations by the defendant were made in response to questions put to him before said Grand Jury, said declarations being as follows:

'Q. Was it Creative Housing that was the client?

A. I have no idea. All I know it was on the west coast, and, as I say, either the St. Petersburg or the Tampa area. And Stu told me they had an opportunity to do the legal business on this. My recollection was that he said that the reference had come from his brother, who is in the real estate business.

And I said, "Well, that's fine. *But if it involves a Government project, we can't*

*possibly get involved in that because that's going to involve a conflict of interest."*

\*　\*　\*　\*　\*　\*

Q. Did Mr. Gilman tell you that Larry Williams had brought Billy Walton to the law firm as a client and that the firm was now getting 236 FHA closings.

A. No. I know nothing about that at all. *As a matter of fact, the discussions I had, and have always had with my law partners—John Skolfield, Gilman—is that whatever business comes into the law firm can't be connected with the United States Government at all, so that there's no conflict of interest.'*

5. The italicized portions of the declarations quoted in paragraph 4, made by the defendant, EDWARD J. GURNEY, were material to said investigation and, as he then and there well knew, were false; in violation of Title 18, United States Code, Section 1623."

Government counsel has, as noted above, orally requested at the commencement of the pretrial conference for a ruling by this Court as to whether the testimony of Stewart Gilman, John Skolfield and, in pertinent parts, that of Larry Williams, who were government witnesses at the first trial, may be used by the government at the second trial in support of the charges contained in Counts One and Eight.

Government counsel candidly conceded that he had been advised by trial counsel for the government at the first trial that the testimony of Stewart Gilman and John Skolfield had been introduced at that time by the government in support of the charges contained in Count Ten as well as in support of Count One. Other than referring the Court to the entire volume of testimony of Gilman and Skolfield and to unspecified portions of Larry Williams' testimony as relating to the issue of Larry Williams' directing business to defendant Gurney's law firm, the Court has not been directed to specific questions and answers. Even though the government has not argued any contentions concerning the evidence adduced in support of Count Ten, this

Court must make its own independent determination and, in the light of the manner in which this is presented to the Court, not construe that the government has completely conceded that the evidence adduced at the first trial in support of Count Ten is barred by collateral estoppel.

Furthermore, the ruling as to Count Ten must necessarily be somewhat general in nature rather than as to specific questions and answers because the submission for ruling has been made in that fashion.

The testimony of witnesses Gilman and Skolfield essentially concerned their relations as former law partners of defendant Gurney and with the intrapartnership controversies and efforts of that firm to secure additional business. In addition, witness Gilman's testimony concerned his activities with Larry Williams and the exchanges of money between Williams and a real estate firm headed by Gilman's brother. In *Ashe, supra,* the Supreme Court stated that where the jury in the first trial had returned a general verdict a Court reviewing for duplication of issues must:

> "[E]xamine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." 397 U.S. at 444, 90 S.Ct. at 1194.

It is apparent from reading Count Ten that the basic issue submitted to the jury was whether the defendant Gurney lied in telling the jury that he had told his then law partners Stewart Gilman and John Skolfield that the law firm could not take clients doing business with the United States Government. The jury returned a verdict of not guilty so that the defendant's acquittal on that issue bars its relitigation.

This Court cannot at this point say that all of the testimony of Stewart Gilman and John Skolfield would be inadmissible but can only set the guidelines which would preclude testimony seeking to relitigate evidentiary factors already determined by the jury, and to the extent that the testimony

of Gilman, Skolfield and Williams would be directed to the issue resolved by the acquittal in Count Ten, the testimony would be barred. (Of course, only a portion of Williams testimony, contained in four volumes of transcript, is related to this particular issue.)

## COUNT ELEVEN

In Count Eleven it was charged as follows:

"1.  On or about the 13th day of May, 1974, in the Middle District of Florida, the defendant,

### EDWARD J. GURNEY

having duly taken an oath that he would testify truthfully and while testifying in a proceeding before the Grand Jury, a Grand Jury of the United States, duly empanelled and sworn in the United States District Court for the Middle District of Florida, did knowingly make false material declarations as hereinafter set forth.

2.  At the time and place alleged, the Grand Jury of the United States District Court for the Middle District of Florida was conducting an investigation in conjunction with the United States Attorney's office for the Middle District of Florida and the Federal Bureau of Investigation to determine whether violations of Title 18, United States Code, Sections 371, 201, 203, and of other statutes of the United States has been committed in the Middle District of Florida and elsewhere, and to identify the individual or individuals who had committed, caused the commission of, and conspired to commit such violations.

3.  It was material to the said investigation that the Grand Jury ascertain whether or not pressure had been exerted upon officials of the Department of Housing and Urban Development to influence the decisions of those officials with respect to their official activities. It was further material to the said investigation that the Grand Jury ascertain the identity and motives of the individual or individuals who were responsible for, participated in, and had knowledge of the exertion of unlawful pressure upon officials of the Department of Housing and Urban Development, and related matters. It was further material to the said investigation that the Grand Jury ascertain whether or not monies or other things of value were paid by persons on whose behalf said influence was exerted and whether or not monies or other things of value were accepted by persons who exerted said influence or who were responsible for or knowledgeable of such.

4.  At the time and place alleged, EDWARD J. GURNEY, the defendant, appearing as a witness, contrary to such oath, knowingly made declarations with respect to material matter which he did not believe to be true, to wit:

In that he stated he did not call Forrest Howell and instruct him not to award a project to Joseph Chapman, whereas in truth and fact as he then and there well knew and believed he did call Forrest Howell and tell him not to award a project to Joseph Chapman.

That the said declarations by the defendant were made in response to questions put to him before said Grand Jury, said declarations being as follows:

Q. Did Jim Groot and yourself speak with Forrest Howell on June 30th of 1972 concerning not awarding a project—a commitment for a project in Tallahassee to a man by the name of Joseph Chapman over in Panama City?

A. *I have no recollection about that.*

\*   \*   \*   \*   \*   \*

Q. Do you have any knowledge of Mr. Chapman being in competition

with a group represented by Mr. Mooney for the award of a commitment of a 236 project in Tallahassee?

A. *No. I never heard that.*

Q. Have you ever called Forrest Howell and instructed him not to award a project to Joseph Chapman?

A. *No.*

5. The italicized portions of the declarations quoted in paragraph 4, made by the defendant, EDWARD J. GURNEY, were material to the said investigation and, as he then and there well knew, were false; in violation of Title 18, United States Code, Section 1623."

As to this count the Government has been more specific as to the portions of the transcript with which it is concerned and has asserted in oral argument a claimed basis for the non-applicability of the doctrine of collateral estoppel to such testimony.

The evidence concerning which the Government seeks a ruling by this Court is a portion of the testimony of witness Groot as set forth in pages 268 to 273 of the transcript, the testimony of witness Howell as set forth in pages 31 to 34, 240 to 244, and 248 of the transcript, the testimony of witness Thomas as set forth in pages 31 to 33 and 69 and 73 of the transcript and the testimony of witness Larry Williams as set forth in pages 677 to 684 of the transcript. All of the foregoing testimony contains conflicting stories of a telephone call between Forrest Howell, FHA Director in Jacksonville, and witness Groot, then Administrative Assistant to then Senator Gurney and the purported conversation between defendant Gurney and Howell during the course of that telephone conversation. The Government by its Count Eleven, charges that the defendant Gurney lied to the grand jury in denying such a call and that in connection therewith he instructed Forrest Howell "not to award a project to Joseph Chapman". The testimony of the Government witnesses were conflicting as to what was allegedly said by defendant Gurney to Howell. Witness Howell testified, page 34 of transcript, that defendant Gurney instructed him that Joe Chapman should not get the project in Tallahassee. Witness Groot testified, page 273 of transcript, that defendant Gurney told Howell "Listen. To penalize . . . Charlie Ware because of his politics is playing politics and it is not fair; and that is all I have to say about it." Both witnesses testified that the call was initiated by Howell in Jacksonville to Groot in Washington and that during the course of the conversation Groot put defendant Gurney on the telephone. Witness Howell, while testifying that he initiated the call, further testified that it was in response to an earlier call from Groot which he had not taken because he was out of his office. Groot's testimony was that the call was completely originated by Howell, but in connection with telephone conversations between him and Howell made earlier in the day.

In oral argument the Government contends that it should not be precluded from offering evidence for the purpose of relitigating the issue of whether defendant Gurney sought by a telephone conversation to tell Forrest Howell to not award a project to Joseph Chapman because the jury acquittal of Count Eleven can allegedly be rationally explained on a basis other than the determination of that issue.

There were three allegedly false statements made by defendant Gurney as charged in Count Eleven, they being the italicized portions of the declarations set forth in the quoted portions from the grand jury testimony as set forth in the copy of Count Eleven above. The third allegedly false answer was "No" to the question "Have you ever called Forrest Howell and instructed him not to award a project to Joseph Chapman?" Government counsel contends that the rational basis for the jury's acquittal as to that portion of Count Eleven turns on the word "called" and not on the portion of the question concerning the alleged instruction.

In support of this contention Government's counsel has directed the attention of the Court to two questions that were submitted by the jury to the trial judge during

the course of its deliberations. These questions follow:

"1. Given a situation where person A calls person C, then person A puts person C on hold and has person B get on the line to person C, has person B actually called person C?

2. Can you put into any clearer laymen's language the section on p. 18 of the instructions (¶ 5) concerning 'literally true and technically responsive' as far as determining the truth or falsity of a statement?"

After consultation with counsel for the parties and rejecting the position of defense counsel that the answer to Question No. 1 should be "No", the trial judge gave the following answer to the jury in writing:

As to question 1:

"This is a matter for you to determine from all the evidence and the instructions of the Court as amplified below. (The quote below in the judge's communication to the jury referred to the answer given to question 2, which follows).

As to question 2:

A statement is not false if it is literally true and technically responsive. If a response was literally true it makes no difference if it may have been incomplete or misleading. A statement is literally true if it responds to the question asked, and if it is even technically or narrowly truthful. If a statement could be interpreted in several ways, as long as one reasonable interpretation of it is literally true, you must find that the answer is not false, and not a violation of the statute."

The Government contends that from the foregoing questions and answers it is logical to conclude that the decision of the jury turned on who called whom, and that a resolution of that issue by finding that Howell called Groot or even if Groot called Howell that Gurney being put on the phone during the course of the call would not be the person making the call would have resulted in finding that the answer of "No" to the last question in Count Eleven was not technically untrue and therefore, not a violation of the perjury statute. From that

the Government argues that it is not foreclosed from relitigating the issue of whether defendant Gurney gave the alleged instruction to Forrest Howell in support of its charge of conspiracy and perjury as contained in Counts One and Eight.

The argument of Government counsel overlooks the issue of materiality. The trial judge had charged the jury (the Courts Instruction No. 19):

"The materiality of the alleged false declarations by the defendant is solely an issue for the Court to decide. In this case it has been determined that, as a matter of law, the declarations of defendant Edward J. Gurney, were material. This means that your task, as jurors, is to determine whether or not the declarations were given falsely and if so, whether or not the defendant knew them to be false at the time he so testified."

As set forth above in paragraph numbered 3 of Count Eleven, it was charged that it was material to the investigation that the grand jury ascertain whether or not pressure had been exerted upon officials of the Department of Housing and Urban Development to influence the decisions of those officials with respect to their official activities.

The determination of the materiality of the last question and answer as made by the trial judge had to be on whether defendant Gurney had instructed Forrest Howell not to award a project to Joseph Chapman. Who initiated the call was not material; in fact, as noted above, there was no issue between the Government witnesses as to who made the call. If who made the call was the material issue then it would have been appropriate to have taken that issue from the jury, because the Government witnesses were both in agreement that Howell placed the call and the Government could not have prevailed. To conclude that the jury's verdict on the third alleged false declaration did not constitute a decision on the fact issue of whether or not Gurney instructed Howell would be to apply a hypertechnical construction disapproved by the Fifth Circuit Court of Appeals. In

*Johnson v. Estelle,* 506 F.2d 347 (1975), at page 352, Judge Goldberg said:

"This Court usually finds that its supply of ingenious semantic puzzles and fantastic hypotheticals emanate from the supplications of defendants. In keeping with deeply rooted American notions of justice and Constitutional edicts, we examine these applications to see if in fact the defendant was denied due process in his trial or whether the facts presented lever the probability that the engaged in criminal activity below the 'reasonable doubt' marker. But fantastic hypotheticals introduced by the State to avoid the defense of double jeopardy are subject to a different standard. We must see if a 'rational jury' could have based its decision on such factors, guided by the principle enunciated in *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475, that 'the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality.' By its injunction to apply collateral estoppel with 'realism and rationality' we believe that the Supreme Court means that we should not allow a second trial, merely because technical requisites of the first charge are not involved in the second, where there is no evidence suggesting that those factors were even presented to the first jury for its active consideration. In the present case the alternative grounds hypothecated by the State are not of the sort which could move a rational jury, on its own, to acquit.

We are convinced that both juries stood their decisions on identity of assailant and intent to rape and did not engage in mental gymnastics so as to land on differing components. Double jeopardy is not a semanticist's paradise, but is to be determined by applying conventional idioms to the jurors' deliberations. There must be some legal necessity basic to one acquittal, not involved in the next trial, to justify a superseding conviction. We cannot permit initial trial deficiencies to be cured by subsequent trials. There are

only four quarters to a football game. The exorcised double jeopardy is the constitutional eliminator of the might have beens. Puristic parallelism is not an absolute in the law of double jeopardy. Multitudinous criminal charges may spring from the same incident. The State's argument in the present case would nullify the doctrine of double jeopardy because any slight deviation in the indictment would give the State another Monday morning quarter."

But even if the position of the Government should be correct as to the alleged last false answer contained in Count Eleven, the jury to render an acquittal had to make a finding in favor of the defendant on both of the other two allegedly false answers contained in that count (see above-quoted Count Eleven). In the trial judge's instruction No. 19, two paragraphs stated:

"Each of the counts charging said defendant with making false material declarations before the grand jury charge him with more than one false declaration in each count. You should consider each answer separately, and not permit your views as to the defendant's guilt or innocence on one answer to control or influence your verdict with respect to the other answer.

Proof beyond a reasonable doubt of any one of the alleged false material declarations is sufficient to convict said defendant of the violation charged in that particular count."

Both of the first two alleged false declarations in Count Eleven concern the same issue, that is, the telephone call and the alleged instruction to Forrest Howell. The Government has confined its contentions to the last and third declaration. This Court concludes that even if the third declaration was found by the jury not to be false on the basis of who made the call that the acquittal on either or both of the first two allegedly false declarations is sufficient to bar a relitigation of the issue of the telephone call and alleged instruction.

Consequently, this Court concludes that the acquittal as to Count Eleven constitutes

an acquittal on the issue of whether defendant Gurney instructed Forrest Howell not to award a project to Joseph Chapman in a telephone conversation and that that issue may not be relitigated by restricting the scope of the acquittal as contended by the Government.

### WHAT THIS RULING DOES NOT HOLD

The Order entered herein, for the reasons set out above, is not a ruling that any and all testimony not covered by this Order is automatically admissible. This is a ruling as to what is inadmissible, not as to what is admissible. Admissibility or inadmissibility on other issues not raised at this time would have to await appropriate consideration at the time of trial. Furthermore, this Order excludes only evidence offered for the purpose of relitigating factual issues previously determined by the acquittals of the defendant Gurney in the prior trial as raised herein.

### ORDER

█ Accordingly, it is ORDERED that for the foregoing reasons, evidence may not be introduced at the trial of this case for the purpose of relitigating the issues which have previously been determined by the acquittals of the defendant Gurney as to Counts Two, Three, Nine, Ten and Eleven, said issues more specifically being (as to Counts Two, Three and Nine) the alleged transaction wherein the defendant Gurney was supposed to receive free a condominium in Vero Beach, Florida; (as to Count Ten) whether the defendant Gurney told his then law partners Gilman and Skolfield that the law firm could not take clients doing business with the United States Government; and (as to Count Eleven) the issue as to whether the defendant Gurney instructed Forrest Howell in a telephone conversation not to give an FHA project to Chapman.