UNITED STATES of America, Plaintiff-Appellant,

v.

Hoyle Wayne WHITAKER, Defendant-Appellee.

No. 81–5452.

United States Court of Appeals, Eleventh Circuit.

April 11, 1983.

---

Curtis Fallgatter, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff-appellant.

Aaron K. Bowden, Jacksonville, Fla., for defendant-appellee.

Before TJOFLAT and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

The government appeals from the district court's pretrial order suppressing on collateral estoppel grounds eleven portions of testimony of a prosecution witness, Milton Eugene Richardson. We affirm the district court's suppression of ten portions of the testimony; we reverse its suppression of the remaining portion.

## I.

On September 14, 1978, Hoyle Wayne Whitaker testified before a grand jury in connection with its investigation into alleged kickbacks and unlawful payments to officials of the Millwright & Machinery Erectors Union, Local 2411. As a result of Whitaker's testimony before the grand jury he was charged in a five-count indictment with perjury, in violation of 18 U.S.C. § 1623 (1976 & Supp. V 1981). The indictment charged that Whitaker had committed perjury in denying to the grand jury that he:

*Count I*—had made a statement that he had heard of persons being requested to make payments to one Andrew Spaulding [a union official]; and had made a statement that he knew of persons making such payments to Spaulding.

*Count II*—had solicited under-the-table payments for Spaulding.

*Count III*—had stated that he had received only $100 for his work collecting under-the-table payments for Spaulding.

*Count IV*—had picked up under-the-table money for Spaulding.

*Count V*—had told, encouraged, and suggested to someone not to talk and provide information to the grand jury.

At trial, the jury convicted Whitaker of perjury under count I of the indictment, but acquitted him on the other four counts. The court of appeals reversed Whitaker's conviction under count I because the district court admitted certain irrelevant and prejudicial evidence. *United States v. Whitaker,* 619 F.2d 1142 (5th Cir.1980).

Upon the commencement of the retrial, Whitaker moved the district court to suppress eleven portions of Richardson's testimony that had been introduced at the first trial. Whitaker argued that collateral estoppel barred this testimony because it concerned issues that the jury had decided in his favor. The court reviewed a transcript of the proposed testimony and granted Whitaker's motion to suppress. The government now appeals this ruling under 18 U.S.C. § 3731 (1976).

## II.

The federal law of collateral estoppel is well established. The Supreme Court has defined the term thus: "when a issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). The Supreme Court has also carefully instructed federal courts on how to apply the doctrine in criminal cases:

> [T]he rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with re-

alism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Sealfon v. United States,* 332 U.S. 575, 579, 68 S.Ct. 237, 240 [92 L.Ed. 180]. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal.

397 U.S. at 443–44, 90 S.Ct. at 1194 (footnotes omitted).

We have recognized that *Ashe v. Swenson* mandates two inquiries: "First, what facts were necessarily determined in the first law suit? . . . Second, has the government in a subsequent trial tried to relitigate facts necessarily established against it in the first trial?" *United States v. Mock,* 604 F.2d 341, 343 (5th Cir.1979) (citations omitted).[1] With the above principles in mind, we review the government's contention that the district court erred in applying the doctrine of collateral estoppel in this case.

## III.

The district court first suppressed the following three portions of the testimony of Richardson, a union member:

1. Richardson testified that Whitaker had told him that Spaulding had come up with a plan under which workers would pay $25 per week to Spaulding to ensure that they would be the last ones to be laid off a job. Whitaker then asked Richardson whether that plan was agreeable with him.

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981), we adopted as precedent decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981.

2. Richardson testified that when he was on an out-of-town job, he received a call from Whitaker, who told him to tell another worker, Harold Parker, "to get ahold of [Spaulding] and get straight with him." Whitaker also related to Richardson that Parker would probably be laid off if he, Parker, did not "get straight" with Spaulding.

3. Richardson testified that Whitaker instructed him how to make payments directly to Spaulding when Richardson was working on an out-of-town job.

Viewing this testimony with "realism and rationality," we hold that no rational jury could have believed any of it while acquitting Whitaker on count II. In finding that Whitaker did not commit perjury when he denied to the grand jury that he had solicited payments for Spaulding the jury necessarily discredited this testimony. Thus the district court was correct in suppressing it.

The government argues that the jury could have believed this testimony, but still found that Whitaker did not "solicit" money for Spaulding because, for example, the workers paid money voluntarily out of economic fear and did not need "solicitation." The government thus urges us to adopt "the hypertechnical and archaic approach" the Supreme Court has instructed us to reject. We are convinced the jury "did not engage in [such] mental gymnastics .... [Collateral estoppel] is not a semanticist's paradise, but is to be determined by applying conventional idioms to the jurors' deliberations." *Johnson v. Estelle,* 506 F.2d 347, 352 (5th Cir.), *cert. denied,* 422 U.S. 1024, 95 S.Ct. 2619, 45 L.Ed.2d 682 (1975);[2] *United States v. Gurney,* 418 F.Supp. 1265, 1273 (M.D.Fla.1976) (quoting *Johnson*). Thus, we reject the government's argument.

■ The district court also suppressed the following three portions of Richardson's testimony:

1. Richardson testified that he had made payments to Whitaker on six or seven occasions.

2. Richardson testified that certain other workers were present when Whitaker collected money, which money Whitaker presumably gave to Spaulding.

3. Richardson testified that he had delivered money on two different occasions to Whitaker at his trailer home.

We hold that no rational jury could have believed this testimony while acquitting Whitaker of count IV. In finding Whitaker innocent of perjury in denying that he had picked up under-the-table money for Spaulding, the jury necessarily rejected this testimony. Thus, the district court was correct in ruling that the government was collaterally estopped from introducing it.

■ The district court also suppressed the following testimony:

1. Richardson testified that Whitaker came to his house and told him that two FBI agents had come by to talk to him, Whitaker. Whitaker then stated that if "everybody would keep their mouth shut, that they wouldn't have anything."

2. Richardson testified that while he was under a grand jury subpoena, he had a conversation with Whitaker in which Whitaker stated that "Spaulding was really upset with the ones that were running their mouth about the investigation and the FBI, and that he would—if he went to jail, he'd make sure that they would get what was coming to them."

3. Richardson testified that before Whitaker testified before the grand jury, Whitaker stated that he was not going to tell the grand jury anything, "that they didn't have anything, that they were just scratching and digging for evidence." Richardson also testified that the morning after Whitaker had appeared before the grand jury, Whitaker was in a bad mood, and had stated: "[I]f people would keep their mouths shut, nothing would ever come of [the investigation]."

**2.** Although the *Johnson* court's language is in terms of "double jeopardy," the statement applies equally to the federal doctrine of collateral estoppel, which "is embodied in the Fifth Amendment guarantee against double jeopardy." *Ashe v. Swenson,* 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970).

4. Richardson testified that Whitaker made a statement or statements to him to the effect: "keep [your] mouth shut and [do not] talk [to the grand jury]," "keep your mouth shut. They don't have anything," "[d]on't go up and run your mouth."

We hold that no rational jury could have acquitted Whitaker of perjury on count V in denying to the grand jury that he had told, encouraged, and suggested to someone not to talk to the grand jury, and still have believed any of the above testimony. The jury necessarily rejected this testimony. Thus, the district court correctly prevented the government from introducing such testimony in a second trial.

The government argues that a rational jury need not have based its acquittal on a rejection of this testimony, but that it may have found that Whitaker was not "telling, encouraging, and suggesting" that Richardson not cooperate with the grand jury, but was merely relating his own personal opinion that if nobody testified, the investigation would fail. The government contends that another interpretation of the jury's verdict is that the jury believed Whitaker was merely relating to Richardson the opinions of Spaulding, and was not "telling, encouraging, and suggesting" to Richardson that he do anything. The government thus echoes its prior arguments urging us to adopt a "hypertechnical and archaic approach" to the law of collateral estoppel. We decline this invitation for reasons already stated. We believe that any rational jury would have believed that Whitaker's purpose in making any of the statements

described above to Richardson was to encourage Richardson not to speak to the grand jury. Any other interpretation of Whitaker's behavior would not reflect "realism and rationality." [3]

The government raises a number of other arguments concerning the application of collateral estoppel to the ten portions of Richardson's testimony previously discussed.[4] For example, it argues that collateral estoppel should not be applied in this case because the first jury's verdict was inconsistent, indicating either a compromise verdict or a misunderstanding of the law. In support of this contention, the government argues that the jury used the very same evidence to convict Whitaker on count I that it used to acquit him on counts II—V.

We cannot agree with this argument because there is a rational explanation for the jury verdicts. Count I of the indictment concerned a statement that Whitaker knew of the kickback scheme; counts II—V of the indictment concerned statements or acts evincing Whitaker's actual participation in the scheme. The jury could have rationally believed that Whitaker had made statements that he knew of the scheme, but that he never actually participated in the scheme. This explanation is particularly persuasive because the government's evidence concerning Whitaker's participation in the scheme was in the form of Richardson's testimony, most or all of which the jury overwhelmingly rejected. In contrast, the evidence that Whitaker had made a statement concerning his knowledge of the

---

**3.** The government also argues that the jury may have interpreted the first statement listed above as Whitaker urging Richardson not to cooperate with the FBI, rather than with the grand jury. Once again, this technical approach does not impress us. In the context of Richardson's testimony as a whole, a rational jury could have interpreted this statement only as a suggestion that Richardson not cooperate with *any* investigative body.

**4.** Most of these arguments do not merit discussion because they reflect a technical approach already rejected. Other arguments concern the relevancy of the above testimony to count I of the indictment, rather than the use of collateral estoppel to bar such testimony. Were we

called on to decide the relevancy of the above testimony, we might rule it inadmissible as irrelevant, *see* Fed.R.Evid. 402, or as unduly prejudicial, *see* Fed.R.Evid. 403. The district court intimated orally that an additional ground for its ruling excluding the testimony was that of undue prejudice. Record, vol. 3, at 38–39. But in its written order, the district court made no mention of undue prejudice and relied solely on collateral estoppel. Record, vol. 2, at 84. For this reason, and because we exclude the testimony described thus far on collateral estoppel grounds, we need not determine the relevancy or prejudicial effect of the above testimony.

scheme was in the form of the testimony of a different witness, Eugene Knighton, who testified at the first trial as follows: [5]

"Question: Can you just remember the substance of what he said about any—his knowledge of any of the under-the-table payments being made to Mr. Spaulding?

"Answer: Well, he indicated to me that he, he was aware of what was going on.... He acknowledged to me that he had some knowledge of what was going on."

Record, vol. 2 supp., at 382.

We believe the jury rejected Richardson's testimony, but believed Knighton's testimony, particularly the portion excerpted above.[6] This is a rational and overwhelmingly likely explanation for the jury's verdicts. Given this explanation, we reject the government's portrayal of a confused jury "engag[ing] in mental gymnastics" to reach a certain verdict. Rather than make us waver in applying collateral estoppel, the consistency of the jury's verdicts reinforces our decision that collateral estoppel bars the government from reintroducing the ten portions of testimony described above.

 The government has also directed us to one aspect of Richardson's testimony that we hold collateral estoppel does not bar. Richardson testified that Whitaker at one time asked him: "Well, you didn't pay [Spaulding] anything for your [union] book after paying $25 a week; did you?" We do

not believe a rational jury would have necessarily rejected this testimony while acquitting Whitaker on counts II—V of the indictment. Count II concerned Whitaker's denial of soliciting payments for Spaulding. The above statement cannot reasonably be interpreted as a solicitation. Count III concerned Whitaker's denial that he had made a statement that he had received only $100 . for collecting money for Spaulding. The above statement has nothing to do with count III. Count IV concerned Whitaker's denial that he had picked up money for Spaulding. The above statement cannot rationally be interpreted as Whitaker's admission that he had picked up such money. Finally, count V concerned Whitaker's denial of trying to persuade others not to speak to the grand jury. The above statement has nothing to do with count V. Thus, the jury did not necessarily reject the above statement in acquitting Whitaker on counts II—V. Therefore, the government is not collaterally estopped from introducing such testimony in the trial below.[7]

### V.

In conclusion, we have reviewed eleven portions of testimony the trial court ruled inadmissible on collateral estoppel grounds. We affirm the district court concerning ten portions of this testimony; we reverse as to one portion.

AFFIRMED in part; REVERSED in part and REMANDED.

---

5. Knighton gave this testimony before the grand jury. The government introduced it at the first trial as substantive evidence when Knighton proved uncooperative as a witness. *See* Fed.R.Evid. 801(d)(1)(A).

6. The court of appeals relied solely on Knighton's testimony in holding that there was sufficient evidence to convict Whitaker on count I. *United States v. Whitaker,* 619 F.2d 1142, 1149 (5th Cir.1980).

7. We decide only that collateral estoppel does not bar the above testimony. We need not decide whether such testimony alone would be enough to support a conviction for perjury on count I. As the prior court of appeals has already noted, the above statement "is a statement by the defendant, albeit in the form of a question, that implies or indicates knowledge, but it is not unquestionably a statement of

knowledge." *United States v. Whitaker,* 619 F.2d 1142, 1149 n. 11 (5th Cir.1980). We agree with this observation and, like the prior court, need not decide this question.

Moreover, we are not called on to decide whether the above statement might be inadmissible on some other ground. We are cognizant that the district court, while hearing argument on Whitaker's motion to suppress, did mention the prejudicial effect of testimony that Whitaker had actually solicited payments on a jury deciding Whitaker's innocence or guilt under count I. The district court did not, however, mention prejudice in its written order or orally in connection with the particular testimony described above. See note 4 *supra.* Thus, we do not believe the question of the inadmissibility of the above statement because of undue prejudice is before us.