Claude W. **ALBERT**, Jr.,
Petitioner-Appellant,

v.

Charles M. **MONTGOMERY**, et al.,
Respondents-Appellees.

No. 82–8695.

United States Court of Appeals,
Eleventh Circuit.

May 21, 1984.

T. Bart Gary, Wasson, Sours & Harris, Atlanta, Ga., court appointed, for plaintiff-appellant.

Mary Beth Westmoreland, Asst. Atty. Gen., Atlanta, Ga., for defendants-appellees.

Before RONEY, FAY and CLARK, Circuit Judges.

FAY, Circuit Judge:

Appellant, Claude W. Albert, Jr., was convicted in Georgia state court of two counts of aggravated assault, attempted armed robbery, armed robbery, attempted rape, kidnapping, kidnapping with bodily injury, and possession of a firearm during the commission of a crime. All of the criminal counts arose from a single assault upon a young man and woman. In this action, Albert appeals from a judgment of the United States District Court for the Middle District of Georgia dismissing his petition for a writ of habeas corpus as to his state convictions.

Appellant raises three issues: (1) whether the admission of evidence at appellant's trial concerning a prior offense for which the appellant was tried and acquitted violates the fifth amendment guarantee against double jeopardy so as to constitute reversible error; (2) whether the pre-trial lineup and in-court identification of the appellant by the victims was tainted by a contrived show-up which created a substantial risk of misidentification and thus denied appellant his fourteenth amendment due process rights; and (3) whether the trial court's instructions on criminal intent impermissibly shifted the burden of proof of an essential element of the crimes under the rationale of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), thus denying appellant due process. Finding that harmful constitutional error was committed during the state trial by the admission of evidence concerning appel-

lant's alleged prior offense, we reverse and remand on the basis of appellant's double jeopardy claim. We affirm the district court as to appellant's misidentification claim, for we find appellant's identification to have been neither impermissively suggestive nor unreliable. We find it unnecessary to reach the merits of appellant's *Sandstrom* claim.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the evening of August 18, 1978, two teenagers, Sandra McEntee and Anthony Lunceford, were attacked by a man as they were parked on a desolate dirt road in Warner Robins (Houston County), Georgia. The two teenagers, returning from a movie in Lunceford's car, decided to stop the car at approximately 10:30 p.m. Just before they turned off a main highway, McEntee and Lunceford noticed a white van as it approached from the opposite side of the highway and passed them. Within seconds after stopping the car, the teenagers saw the van pass by a second time.

Approximately five to ten minutes after McEntee and Lunceford last saw the white van, a man approached the driver's side of Lunceford's car, pointed a pistol at Lunceford and demanded money. The man was wearing a pair of women's underpants over his head as a mask. He also wore a tee shirt, blue jeans, boots and yellow gloves similar to Playtex dishwashing gloves.

Lunceford blew the horn on the automobile, as he and Sandra began to scream. The assailant demanded that they keep quiet and threatened to shoot them if any further noise was made. Lunceford gave the assailant ten dollars; the assailant then ordered Lunceford to get out of the automobile. The assailant slapped Lunceford and forced him at gunpoint into the trunk of the car, stating at that time that he was going to rape McEntee. The assailant then forced McEntee into the back seat and drove the vehicle further into the wooded area until he reached a clearing.

The assailant then demanded that McEntee remove her clothing and indicated that he was going to rape her. McEntee hesi-

tated and begged not to be raped or killed. The assailant responded that if she would not do as he insisted, she would die a slow death and that he would also kill Lunceford. When the assailant put a pistol to McEntee's head, she became hysterical and the assailant began to strike her. McEntee fought back, and the assailant hit her several times in the head with his pistol.

As McEntee began to wipe the blood from the wound on her head, the assailant temporarily stopped beating her. The assailant stated that he was preparing to kill Lunceford. When the assailant began to leave the automobile, McEntee shoved the front seat of the car forward, forcing the assailant to stumble out of the car. McEntee climbed out of the back seat and struggled with the assailant. During the struggle, the mask over the man's face was partially removed and McEntee was able to see most of his face. During the fight, McEntee scratched the assailant's face and he cried out in pain. After scratching the assailant, McEntee ran to the trunk of the vehicle and released Lunceford. Lunceford also viewed the assailant at this time, as the assailant's mask covered only his mouth and throat. Lunceford and McEntee then fled through the nearby woods until they reached a telephone and notified the Houston County Sheriff's Department of the incident. Both victims immediately gave a description of the assailant to the sheriff.

The police investigation of the matter almost immediately focused upon the appellant, as Detective Joel Sullivan, of the Warner Robins Police Department, related to Sheriff Talton, of the Houston County Sheriff's Department, that the physical description of McEntee's and Lunceford's assailant was similar to appellant Albert whom Sullivan had investigated in a previous incident. Sullivan also emphasized that the two offenses were similar.

On August 20, 1978, Sheriff Talton and Sergeant Stewart of the county sheriff's office arranged to drive Lunceford and McEntee to several locations in Warner Robins in an attempt to identify the van

which had passed them on the night of the attack. Sheriff Talton also sent Deputy Dees and Sheriff Talton's daughter in a separate vehicle to appellant's home. The sheriff later testified that the purpose of this visit was to view the appellant so as to confirm the description given by the victims. R. Vol. I. at 31–32. The sheriff's deputy and daughter approached appellant's home under the pretext of inquiring about a dog.

After viewing several vans in the area, McEntee and Lunceford were driven past appellant's house. Both McEntee and Lunceford identified the van in the driveway of appellant's house as the vehicle which they had seen on the night of the attack. After passing appellant's house with the victims, Sheriff Talton turned his vehicle around and drove McEntee and Lunceford past appellant's residence once again. The sheriff's second trip in front of appellant's house coincided with the visit of Deputy Dees and the sheriff's daughter to Albert's home. As Sheriff Talton drove by the house, the appellant was standing on his front porch in conversation with Deputy Dees. McEntee and Lunceford were thus able to view the appellant and McEntee immediately identified Albert as her assailant. The appellant was arrested shortly thereafter and on the same afternoon was placed in a lineup. McEntee and Lunceford both identified appellant as their assailant during the lineup.

On September 12, 1978, appellant was indicted by the Houston County, Georgia grand jury for nine counts of criminal conduct arising from the attack upon McEntee and Lunceford. Appellant was charged with two counts of aggravated assault, attempted armed robbery, armed robbery, attempt to commit rape, kidnapping, kidnapping with bodily harm, theft of a motor vehicle, and possession of a firearm during the commission of a crime. Beginning on February 26, 1979, the appellant was tried by a jury in the Superior Court of Houston County, Georgia. The state's case focused upon the identification by McEntee and Lunceford of appellant as their assailant. However, as part of the state's case-in-chief, the prosecutor also introduced the testimony of Terri Lynn Hatcher and Detective Sullivan of the Warner Robins Police Department who testified, over objection by appellant's trial counsel, concerning a prior attempted armed robbery allegedly committed by the appellant. R. Vol. I. at 162–80. The prior incident in question occurred in Houston County on March 22, 1977, when Miss Hatcher, a high school student, was accosted by a white male with a gun who demanded money. The appellant had been tried and acquitted by a jury in the Houston County Superior Court of that attempted armed robbery charge. The prosecution also introduced through Miss Hatcher several photographs of appellant and appellant's truck which Miss Hatcher identified. R. Vol. I at 446–56.

The remainder of the state's case focused upon physical evidence through which the state attempted to link appellant to the attack upon McEntee and Lunceford. Specifically, the state introduced into evidence a tee shirt, a pair of blue jeans and lace-up boots which were seized from appellant's house and van. Lunceford testified that the boots seized from appellant's vehicle appeared similar to those which were worn by the assailant during the attack. R. Vol. I at 47. Expert testimony established that appellant's right boot had a similar size, tread pattern and wear pattern as the bootprints which had been taken at the crime scene. R. Vol. I at 152. Yellow gloves were also seized from appellant's home. Lunceford testified that the gloves were similar to those worn by the assailant during the attack. R. Vol. I at 105. Testimony was also introduced that appellant, at the time of his arrest, had fresh scratches on his chest, arm and head which appellant claimed had been made by a bird in his pet store. Appellant also had a chipped front tooth. McEntee testified that she had not only scratched the assailant during their struggle but that she had struck the assailant in the mouth with her hand, sustaining a cut on her knuckle which required several stitches. R. Vol. I. at 133, 156.

The sole defense presented by appellant at trial was that of insanity. The appellant introduced testimony of several expert witnesses to the effect that he was suffering from schizophrenia and was legally insane at the time of the incident. R. Vol. I at 269–274. On March 1, 1979, the jury returned a verdict of guilty as to all but the motor vehicle theft count of the indictment.[1]

Appellant appealed his conviction and sentence to the Georgia Court of Appeals, which affirmed his conviction and sentence on November 16, 1979. *Albert v. State,* 152 Ga.App. 708, 263 S.E.2d 685 (1979). The Supreme Court of Georgia denied appellant's application for a writ of certiorari on February 6, 1980.

On July 29, 1980, appellant filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1980) in the United States District Court for the Middle District of Georgia, Macon Division, in which appellant raised the same issues which he now presents before us. On February 25, 1982, a magistrate filed proposed findings of fact and conclusions of law recommending the denial of the federal petition. On August 23, 1982, the district court entered an opinion denying relief on each of the three grounds raised.

On August 26, 1982, the district court issued a certificate of probable cause to authorize appeal pursuant to 28 U.S.C. § 2253 (1980). Following the district court's denial of appellant's motion for reconsideration, appellant on October 15, 1982 filed a notice of appeal before this court.

## II. COLLATERAL ESTOPPEL

Appellant contends that the introduction of evidence at trial concerning the prior alleged attempted robbery of Miss Hatcher,

for which appellant had been acquitted, contravenes the constitutional principle of collateral estoppel. Appellant further contends that the introduction of such evidence cannot be considered harmless error. We agree and therefore reverse the district court's denial of appellant's habeas petition.

■ The trial court admitted extensive testimony and evidence concerning the Hatcher incident, over defense objections, for the purpose of showing "intent, motive, scheme and bent of mind of the defendant." R. Vol. I at 160. Although Georgia law permits the introduction of evidence concerning prior similar acts, even those for which a defendant has been acquitted, as evidence of identity or motive, *see Rivers v. State,* 147 Ga.App. 19, 248 S.E.2d 31 (1978), it is clear that the Supreme Court and this court have held that the principle of collateral estoppel prevents the introduction of such evidence for *any* purpose.

■ Collateral estoppel means simply that once an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The Supreme Court has held this concept of collateral estoppel to be embodied in the fifth amendment guarantee against double jeopardy. *Id.* at 445, 90 S.Ct. at 1195, 25 L.Ed.2d at 476.[2]

■ This court has embraced the holding of *Ashe* to consistently emphasize that a defendant should not be forced to defend against charges or factual allegations which he overcame in an earlier trial. *See United States v. Mulherin,* 710 F.2d 731 (11th Cir.1983); *United States v. Whitak-*

---

1. The fifth amendment provides in part: "[no person] shall ... be subject for the same offense to be twice put in jeopardy of life or limb...." The state court sentenced appellant to imprisonment for life on the kidnapping with bodily harm charge and to varying terms from five to fifteen years on the remaining charges, all but one of which are to be served concurrently with the life sentence.

2. The Court has held the right against double jeopardy to be a fundamental right applicable to the states through the fourteenth amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

*er,* 702 F.2d 901 (11th Cir.1983); *United States v. Mock,* 604 F.2d 341 (5th Cir.1979); *Blackburn v. Cross,* 510 F.2d 1014 (5th Cir.1975); *Wingate v. Wainwright,* 464 F.2d 209 (5th Cir.1972).[3] The court in *Wingate* stated that:

> It is fundamentally unfair and totally incongruous with our basic concepts of justice to permit the sovereign to offer proof that a defendant committed a specific crime which a jury of that sovereign has concluded he did not commit. Otherwise, a person could never remove himself from the blight and suspicious aura which surround an accusation that he is guilty of a specific crime.

*Wingate v. Wainwright,* 464 F.2d at 215.

■ Applying these standards to this case, we find the admission of testimony concerning the prior incident with Miss Hatcher to be erroneous under the law of this circuit. Appellant was acquitted of the crime against Miss Hatcher in the same court in which he stood to address the later charges. The record in this case shows that appellant's acquittal on the earlier charges was based upon Miss Hatcher's failure to identify the appellant as her assailant to the jury's satisfaction and upon appellant's alibi defense. R. Vol. I. at 172, 220. Such a verdict is clearly one on the merits which is not susceptible of second-guessing at a later date. However, our review does not end here. We must further determine whether the introduction of this testimony and the related prosecutorial arguments and jury instructions was merely harmless error.[4]

■ The Supreme Court has stated the proper analysis in determining whether the admission of prohibited evidence is merely "harmless constitutional error" to be "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). Only if a court can declare with confidence "beyond a reasonable doubt" that such a possibility is excluded by the record can it declare a constitutional error harmless. *Id.* at 24, 87 S.Ct. 824; *see also Mock,* 604 F.2d at 346. Applying this standard to the facts surrounding appellant's trial, we find that the error was prejudicial.

■ The record reveals that the evidence against Albert—the identification by McEntee and Lunceford of appellant and his van combined with the physical evidence linking appellant to the crime—was convincing. However, the prosecutor in her closing argument relied heavily upon the prior offense evidence to establish appellant's involvement in "both" offenses and to disparage appellant's insanity defense.[5] In *Win-*

3. Decisions of the Fifth Circuit rendered prior to October 1, 1981, are binding precedent on this court unless and until overruled or modified by this court *en banc. Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

4. The district court found and the state concedes that the admission of evidence concerning the Hatcher incident was erroneous under this court's decisions in *Wingate, Blackburn,* and *Mock.* The district court concluded, without an evidentiary hearing, that in light of the victim's identification of appellant and the other physical evidence introduced by the state the error was harmless. R. Vol. I at 94–5.

Appellant argues that, "although no court has so held, the fifth amendment prohibition against double jeopardy is a constitutional right so basic to a fair trial that [its] infraction can never be treated as harmless error." *See Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967) (enumerating the right to counsel, the prohibition against the use of coerced confessions, and the right to be tried by an impartial judge among such rights). However, we are bound by the language of *Mock* which clearly states the harmless error doctrine to be the proper basis for analyzing a collateral estoppel claim.

5. In her closing argument, the prosecutor said:

What circumstance of the defendant, of his history, of his behavior, of the offenses, in any way indicate that he during the commission of the offenses lacked the ability to distinguish right from wrong? ... [H]e got identified by Terri Hatcher, so the next time he had to do something to hide himself.... [H]e disposed of the gun as he had done in Terri Hatcher's case, and also in the attack on Terri Hatcher was [during] an evening when his wife was not at home, when he took a gun, cruised around until he found a high school student and attacked her.... The defendant

*gate*, the court found that a single comment by the prosecutor [6] sufficiently compounded. the prejudice from admission of the prior offense evidence so as to render the testimony prejudicial. 464 F.2d at 214. Likewise, the court in *Mock* refused to apply the harmless error rule, finding that the prosecution in opening and closing arguments "relied heavily on facts which had been foreclosed to it by the first trial." 604 F.2d at 347.

The prejudicial effect of the prior offense evidence was compounded by the fact that the jury in appellant's trial received no limiting instructions as to the testimony concerning the Hatcher incident. The jurors listened as the state completely relitigated the prior case without a clue as to why the prior offense evidence was being presented. Furthermore, the trial court's charge to the jury erroneously indicated that whether appellant had committed the prior offense against Miss Hatcher was a matter for its determination.[7]

Notwithstanding the other evidence against appellant, it is impossible for us to conclude under these circumstances that the erroneous admission of testimony concerning the Hatcher incident was harmless beyond a reasonable doubt. Contrary to the state's contentions, whether the prior offense evidence constituted three pages of the trial transcript or three hundred pages is not the dispositive issue. It is difficult for us to imagine anything more devastating in a case such as this than the fact that a defendant had committed the alleged act before. Even if the prior offense testimony consisted of answers to only one or two questions, this testimony could still constitute the most devastating aspect of the trial for appellant. Where, as here, the damaging testimony was compounded by use of the prior offense evidence during closing argument and in the jury instructions, we cannot at all be assured that the jury would have reached the same conclusion had it not heard of the attack upon Miss Hatcher.

## III. PRE–TRIAL IDENTIFICATION

Appellant also contends that his lineup and his in-court identification were impermissively tainted by a contrived show-up on the day of arrest so as to deny appellant his fourteenth amendment due process rights. Appellant urges that McEntee and Lunceford's viewing of appellant on appellant's front porch, as Sheriff Talton drove the victims past appellant's home, was contrived and so suggestive that the identification cannot be considered reliable. We disagree.

In order for appellant to prevail, he must convince us that the identification procedure was "so impermissively suggestive as to give rise to a very substantial likelihood of misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), *cited in Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972). In making this determination, we must consider the totality of the circumstances, including

the opportunity of the witness to view the criminal at the time of the crime, the

---

is caught like a rat in a trap. The evidence has been so stacked against him, he has been so affirmatively linked with the crime, his only out, he used the alibi last time, is insanity.... It's very convenient that his psychotic behavior only occurs when his wife is out of town at night while he's alone.... The facts and circumstances surrounding both offenses indicate that he knew what he was doing.... The defendant *is not*, was not, insane at the time of the offenses....

6. In *Wingate*, the prosecutor stated: "I am asking you not to allow this man to go back on the street and to redo those things that he has done...." 464 F.2d at 210.

7. The trial court stated:

In this case the State contended that the defendant was involved in a similar offense in 1977, and offered evidence concerning that occurrence. The court allowed that evidence solely for you to decide whether it might tend to illustrate the defendant's motive, intent or state of mind with respect to the charges for which he is now on trial, and for no other purpose. Whether the defendant in fact committed such other offense, and if so whether it illustrates his state of mind in this case, is a matter for you to decide.

R. Vol. I at 396–97.

witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.* at 199–200, 93 S.Ct. at 382.

In this case, we do view the simultaneous arrival by two different cars at appellant's home, which thereby placed appellant on the porch as the victims were driven by, as suspicious. However, the state habeas court found that this identification was "a complete happenstance, unarranged by police," *Albert v. State,* 152 Ga.App. 708, 709, 263 S.E.2d 685, 686 (1979), and no court has found these circumstances to be in any way contrived. We therefore find that the brief, inadvertent encounter in question was not impermissively suggestive. This finding, in turn, supports the reliability of the identification. *See, e.g., Code v. Montgomery,* 725 F.2d 1316 at 1319 (11th Cir. 1984) *(per curiam ); United States v. Harper,* 680 F.2d 731 (11th Cir.), *cert. denied,* 459 U.S. 916, 103 S.Ct. 229, 74 L.Ed.2d 182 (1982).

The pretrial lineup and in-court identification of appellant were also encompassed by extensive indicia of reliability. During the attack, both victims were able to view the assailant after the assailant's mask was removed. Miss McEntee, in particular, spent a considerable period of time with her assailant and during much of this time faced him directly. Both victims were able to give a detailed description of the assailant immediately following the attack, and the lineup took place less than two days after the crime had occurred. We find that the challenged procedure was reliable and that it provides no basis for habeas relief.

## IV. THE *SANDSTROM* ISSUE

Appellant's final contention is that the trial court's charge to the jury on intent unconstitutionally shifted the burden of proof on that element of the crimes and thus denied appellant due process of law. *See Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). In light of our remand of this case for the granting of habeas corpus relief on the basis of appellant's double jeopardy claim, we need not determine whether the questioned instructions in appellant's trial are sufficiently erroneous so as to support a collateral attack on the state court judgment. If the state decides to retry appellant, we trust that the court on retrial will charge the jury in accordance with the decisions of this court which discuss the *Sandstrom* issue. *See, e.g., Davis v. Zant,* 721 F.2d 1478, 1488 (11th Cir.1983), *reh'g en banc granted,* 728 F.2d 492 (11th Cir.1984); *Franklin v. Francis,* 720 F.2d 1206, 1208–12 (11th Cir.1983); *Brooks v. Francis,* 716 F.2d 780, 793–94 (11th Cir.1983), *reh'g en banc granted,* 728 F.2d 1358 (11th Cir. 1984); *Corn v. Zant,* 708 F.2d 549, 558–60 (11th Cir.1983); *Lamb v. Jernigan,* 683 F.2d 1332, 1341 (11th Cir.1982), *cert. denied,* 460 U.S. 1024, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983).

## V. CONCLUSION

For the foregoing reasons, we reverse and remand this case for the granting of relief in accordance with this opinion.

REVERSED AND REMANDED IN PART AND AFFIRMED IN PART.