**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Quinton M. GORNTO, III, a/k/a**
**"Q.M.", Defendant-Appellant.**

**No. 85–3490.**

United States Court of Appeals,
Eleventh Circuit.

June 30, 1986.
As Amended July 16, 1986.

Philip G. Butler, Jr., West Palm Beach, Fla., for defendant-appellant.

Barbara Schwarts, Asst. U.S. Atty., Ross A. Nabatoff, Tallahassee, Fla., plaintiff-appellee.

Before GODBOLD, Chief Judge, TJO-FLAT, Circuit Judge, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This criminal appeal invokes two applications of the doctrine of collateral estoppel where a defendant indicted on multiple counts is acquitted on one or more of the counts and subsequently retried on the remaining counts. First, we must determine whether the doctrine bars from introduction into evidence at appellant's second trial

certain portions of the testimony of a government witness who also testified at appellant's first trial. Second, we must determine whether the doctrine is a complete bar to retrial.

Appellant, in his first trial, was charged with (1) importing marijuana in violation of 21 U.S.C. § 952(a); (2) possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841; (3) conspiring to import marijuana in violation of 21 U.S.C. §§ 952(a) and 963; and (4) conspiring to possess marijuana with intent to distribute in violation of 21 U.S.C. §§ 841 and 846.

The trial court granted appellant's motion for severance from his co-defendants. At the conclusion of the trial, the jury found appellant not guilty of the crimes charged in counts 1 and 2, the substantive counts, but was unable to reach a verdict on counts 3 and 4, the conspiracy counts. The trial court therefore declared a mistrial.

At appellant's second trial, on the conspiracy counts, the jury found him not guilty of conspiracy to possess marijuana with intent to distribute, but guilty of conspiracy to import marijuana. Appellant begins attacking his conviction by challenging the admissibility of certain testimony given by the principal government witness.

### I. *Testimony of Witness Carver*

[1] At appellant's first trial, Bart Carver testified about appellant's involvement in drug transactions at an apartment in Jupiter-Tequesta. He testified:

A sale was arranged by John Thomas to someone who is in the Jupiter-Tequesta area. I went over and counted out a hundred thousand dollars. Q.M. Gornto was with me from time to time during the counting of the money. He had some chores he had to do, like put the pot in position to be moved and given over to these fellows, the money was counted and then Q.M. and I both took the money and we went to the apartment while the pot was being transferred.

In response to the question: "[h]ow much money did you end up getting?",

Carver responded: "The same as Q.M., $15,000."

At the second trial, Carver testified as follows:

Q: Did you later see John Thomas or Q.M. again with any of the marijuana?

A: Got a phone call the next day to secure an apartment, which I did. I secured an apartment in Jupiter, in Jupiter at Tequesta.

Q: Speak up.

A: I secured an apartment in the Jupiter, Tequesta area for Q.M., John and myself, where we would operate out of to sell the marijuana that came in.

Q: Was marijuana brought there?

A: Only samples.

Q: Okay. And was any sold?

A: Yes, there was.

Q: How much?

A: There was two sales that I'm aware of, one to Dennis Beach and one to a fellow by the name of Scott.

Q: How much money was made off of it?

A: I can't really say, but I counted out $112,000 that Scott had.

Q: How much did you get?

A: $15,000, with another 40 to come, which I never got.

Q: How much did Q.M. get?

A: $15,000 with a promise of another 40 to come, which I have no idea whether he got.

Q: Who paid Q.M. the money?

A: John Thomas.

Q: In your presence?

A: In my presence at the apartment.

The trial court denied appellant's motion to exclude Carver's testimony on the basis of collateral estoppel, stating:

The Defendant maintains specifically and complains that the testimony of Barton Carver at the first trial that the Defendant Gornto helped transport mari-

juana from North Florida to West Palm Beach, that is in the Southern District of Florida, that he possessed the marijuana in West Palm Beach and that he helped distribute it.

The defendant contends, and the Court believes correctly so, that the first jury must have disbelieved this testimony in order to acquit the Defendant on the substantive counts.

Where the Court disagrees with the Defendant is that the Government was permitted to present the very same testimony of Bart Carver to prove the conspiracy count at the second trial.

A comparison of the testimony shows that any details as to the Defendant Gornto's possession or distribution of drugs were eliminated at the second trial.

Appellant argues that the trial court erred in denying his motion.

■ We agree. We believe the trial court misapplied the doctrine of collateral estoppel. In *United States v. Whitaker*, 702 F.2d 901 (11th Cir.1983), this Court noted that the federal law of collateral estoppel is well established, and requires that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 702 F.2d 903, quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). This concept is embodied in the fifth amendment guarantee against double jeopardy. *Ashe v. Swenson, supra,* at 445, 90 S.Ct. at 1195. In a criminal context, the doctrine prohibits the government from forcing a defendant to defend against charges or allegations which he overcame in an earlier trial. *Albert v. Montgomery,* 732 F.2d 865, 869 (11th Cir.1984). As the former Fifth Circuit noted in referring to the doctrine of res judicata, and as we note as to its kinsman, collateral estoppel:

It is fundamentally unfair and totally incongruous with our basic concepts of justice to permit the sovereign to offer proof that a defendant committed a specific crime which a jury of that sovereign has concluded that he did not commit. Otherwise, a person could never remove himself from the blight and suspicious aura which surround an accusation that he is guilty of a specific crime.

*Wingate v. Wainwright,* 464 F.2d 209, 215 (5th Cir.1972).

We have recognized that *Ashe v. Swenson* mandates two inquiries: First, what facts were necessarily determined in the first law suit? Second, has the government in a subsequent trial tried to litigate facts necessarily established against it in the first trial? *United States v. Whitaker,* 702 F.2d at 901, 903; *United States v. Mock,* 604 F.2d 341, 343 (5th Cir.1979); *United States v. Ballard,* 586 F.2d 1060 (5th Cir.1978). When making the *Ashe v. Swenson* inquiries, we must set them in a practical frame and view them with an eye to all the circumstances of the proceedings. *United States v. Whitaker, supra,* at 903 (citation omitted.)

As to the first inquiry, we agree with the trial court that the jury's acquittal on the substantive counts meant that they disbelieved Carver's testimony about appellant's activities at the apartment in Jupiter-Tequesta.

As to the second inquiry, however, we disagree with the trial court. The doctrine of collateral estoppel would be a totally ineffective shield against the threat of double jeopardy if it simply prevented the introduction into a subsequent trial of the same version of testimony given at a prior trial. Although, as the trial court points out, "... any details of drugs were eliminated at the second trial," the gist of the testimony was the same. Just as in the first trial, Gornto had to defend against the assertion that he possessed marijuana at an apartment in Jupiter-Tequesta. This, the doctrine of collateral estoppel prevents.[1]

---

**1.** We reject the government's contention that *United States v. Ballard,* 586 F.2d 1060 (5th Cir.1978), compels a different result. There the Court found that: "A reasonable and normal

Having concluded that the trial court erred, we must now determine whether the error was harmless. To make this determination, when the error is of constitutional dimensions, we ask "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967); *Albert v. Montgomery,* 732 F.2d 865, 870 (11 Cir.1984); *United States v. Mock,* 604 F.2d 341, 342, 346 (5th Cir.1979). If we can say with confidence beyond a reasonable doubt that such a possibility is excluded by the record, then we say that the constitutional error is harmless. *Chapman v. California, supra,* at 24, 87 S.Ct. 824; *Blackburn v. Cross,* 510 F.2d 1014, 1019 (5th Cir.1975). Otherwise, the constitutional error is not harmless, and the resulting conviction is so tainted that it must be reversed. With this standard in mind, we turn to the facts surrounding appellant's trial.

The record reveals that Bart Carver was the principal witness against appellant Gornto. Carver testified that he, appellant, and John Thomas[2] often discussed drug smuggling, including the occasions on which appellant drove him and Thomas to Miami. He further testified that on these trips to Miami the three met with Luciana Morra at a Miami restaurant to discuss drug smuggling. He testified that appellant was present during all of these meetings. Both appellant and Thomas, however, deny that appellant knew about the scheme. They testified that the scheme was not discussed in appellant's presence and that appellant knew nothing about it until August of 1979, at which time he withdrew from associating with the conspirators.

The act which appellant claims constitutes withdrawal is his slamming the door and saying, "get the hell out" when Thom-

as came to his home on or about August 25, 1979 seeking assistance in repairing the boat used in the scheme to import marijuana.

Carver, however, testified that appellant was involved in the conspiracy beyond August of 1979. First, he testified that sometime after the alleged withdrawal he and appellant stayed together in North Palm Beach awaiting further instructions from Thomas. Second, he testified that as the two waited, appellant received a telephone call from Thomas' wife and that appellant then drove to Tallahassee to protect her from possible harm, since Thomas was planning to "ripoff" his drug partners. Third, Carver testified that he secured an apartment for himself, appellant, and Thomas and that they sold drugs from the apartment and that appellant received $15,-000 for his part. This allegedly occurred sometime on or about September 9, 1979.

Appellant argues that admission of Carver's testimony as to drug dealing from the apartment in Jupiter-Tequesta was prejudicial because it was the only evidence in opposition to his defense that he withdrew from the conspiracy. In response, the government argues that any error is harmless because withdrawal from a conspiracy is impossible once the individual has committed an overt act. Moreover, the government argues that withdrawal is irrelevant. It bases this argument on its understanding that while withdrawal may relieve a defendant of liability for substantive crimes occurring after the withdrawal, it does not relieve him of liability for the crime of conspiracy. Thus, the government argues that since appellant is not charged with a substantive crime, withdrawal is irrelevant. Finally, the government contends that in any event appellant failed to satisfy his burden of proving withdrawal.

jury could have found appellant not guilty of the substantive offense without deciding against the government the facts which were presented in the second trial to establish her guilt." Here, we have concluded, as did the trial court, that appellant's acquittal meant the jury did not be-

lieve that he possessed and distributed drugs from the apartment in Jupiter-Tequesta.

2. John Thomas was charged with being the principal culprit. He entered a plea agreement with the government.

We first address the relevance of withdrawal. As the government points out, withdrawal from a conspiracy is impossible once an overt act is committed, *United States v. Collins,* 779 F.2d 1520, 1527 (11th Cir.1986); *United States v. Marolla,* 766 F.2d 457, 460 (11th Cir.1985); *United States v. Nicoll,* 664 F.2d 1308 (5th Cir., Unit B, 1982), although withdrawal may preclude liability for substantive offenses occurring after withdrawal. *U.S. v. Marolla, supra* at 461 (citing *U.S. v. Nicoll, supra,* at 1315, n. 7). Here, however, we understand appellant's argument to be not so much that his withdrawal bars his conviction of conspiracy, but that his withdrawal outside the statute of limitations bars his conviction.

The statute of limitations for conspiracy is five years. 18 U.S.C. § 3282. The statute begins to run when a defendant effectively withdraws. *Hyde v. United States,* 225 U.S. 347, 368–69, 32 S.Ct. 793, 802–03, 56 L.Ed. 1114 (1912); *United States v. Read,* 658 F.2d 1225, 1233 (7th Cir.1981); *United States v. Borelli,* 336 F.2d 376, 389 (2nd Cir.1964); *Eldredge v. United States,* 62 F.2d 449, 451 (10th Cir. 1932); *Buhler v. United States,* 33 F.2d 382, 384–85 (9th Cir.1929). Thus, if appellant effectively withdrew from the conspiracy on August 25, 1979, his conviction would be barred by the statute of limitations, since the indictment was returned on August 30, 1984, more than five years later.[3] We therefore find the question of withdrawal relevant.

We next consider whether, as a matter of law, appellant failed to meet his burden of proving withdrawal. This Court has held that "mere cessation of activity in furtherance of the conspiracy does not constitute withdrawal." *United States v. Phillips,* 664 F.2d 971, 1018 (5th Cir., Unit B, 1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982), 459 U.S. 906 (1982). Rather, the "... conspirator must show that he acted affirmatively to defeat or disavow the purpose of the conspiracy." *Id.* at 1018 (quoting *United States v. Wentland,* 582 F.2d 1022, 1025–26 (5th Cir.1978), *cert. denied,* 430 U.S. 1133, 99 S.Ct. 1056, 59 L.Ed.2d 96 (1979). *See U.S. v. Jiminez,* 622 F.2d 753, 755 (5th Cir.1980) (defendant must demonstrate that he took affirmative acts inconsistent with object of conspiracy and communicated this in a manner reasonably calculated to reach co-conspirators). We have also stated, however, that withdrawal may be demonstrated in a variety of ways. *U.S. v. Jiminez, supra,* at 755.

Here, appellant introduced as the principal evidence of withdrawal his slamming the door in Thomas's face when Thomas sought assistance in repairing the boat used to import marijuana. Thomas testified at trial that the door slamming incident left no doubt in his mind that appellant wanted nothing else to do with the conspiracy.

We do not say as a matter of law that this incident did not rise to the level of withdrawal. We leave that determination to the jury, as the trial court did in this case. We believe, however, that the jury's determination of this issue was weighted against appellant by virtue of the improperly admitted testimony.

When the jury considered appellant's claim that he withdrew on August 25, 1979, they were presented with testimony by Carver which connected appellant to the conspiracy after August of 1979. Carver testified that: (1) he and Gornto waited in an apartment in North Palm Beach for instructions from Thomas; (2) that Gornto left this apartment and went to Tallahassee when he received a phone call from Thomas's wife. The purpose of the trip was to protect her if the deal went bad; and (3) that he, Thomas, and Gornto possessed and distributed the imported marijuana from an apartment in Jupiter-Tequesta.

It is apparent that the testimony as to appellant's actions at the apartment in Jupiter-Tequesta, which we have held should

---

**3.** The trial court instructed the jury that the government has the burden of proving that each crime alleged in the indictment occurred within five years before August 30, 1984, when the indictment was returned.

have been excluded, was the most damaging testimony connecting him to the conspiracy after his alleged withdrawal.

Thus, we hold that admission of this testimony was prejudicial. In so doing, we are in line with cases of this Circuit which have found prejudicial the admission of evidence in violation of the doctrine of collateral estoppel. *See Albert v. Montgomery,* 732 F.2d 865, 870–71 (11th Cir.1984) (despite convincing evidence of guilt, admission of evidence barred by collateral estoppel not harmless error); *Blackburn v. Cross,* 510 F.2d 1014, 1019 (5th Cir.1975) (although evidence of guilt "quite convincing," admission of testimony that appellant committed a prior crime for which he had been acquitted not harmless error.); *Wingate v. Wainwright,* 464 F.2d 209, 214 (5th Cir.1972) (introduction of evidence of prior robberies as to which appellant was acquitted not harmless error in light of government's heavy reliance on evidence.); *Yawn v. United States,* 244 F.2d 235, 238 (5th Cir.1957) (introduction of evidence of illegal possession and operation of distiller in conspiracy trial not harmless error when appellant previously acquitted of possession. *See also, United States v. Mespoulede,* 597 F.2d 329, 334 (2nd Cir.1979) (citing the "strikingly similar" reasoning of *Wingate v. Wainwright* and reversing conviction because evidence of possession introduced in conspiracy trial when appellant had already been acquitted of possession).

Quite apart from the statute of limitations and withdrawal issue, we find the error prejudicial. Evidence of appellant's guilt is less convincing than in the cases cited above. The principal evidence against appellant was the testimony of Carver, which was controverted at every turn. In light of our holding that a significant part of Carver's testimony was inadmissible, we cannot say with confidence beyond a reasonable doubt that the record excludes the possibility that evidence that appellant possessed and distributed marijuana at an apartment in Jupiter-Tequesta did not contribute to his conviction for conspiracy to import the same load of marijuana. Accordingly, we hold that admission of Carver's testimony was not harmless error.

## II. *Collateral Estoppel Barring Second Trial*

██ Appellant contends that his acquittal on the substantive counts at the first trial should have prevented his being retried on the conspiracy counts because the jury at the first trial necessarily determined that he was not a part of the conspiracy. To support this proposition, he relies principally on *United States v. Larkin,* 605 F.2d 1360 (5th Cir.1979), *mod. on reh.,* 611 F.2d 585 (5th Cir.1980).

In *Larkin,* the indictment charged the defendant under Title 18 U.S.C. § 371 with conspiring to commit five specified illegal acts, which were charged as substantive offenses in the indictment. The defendant's criminal responsibility as to the substantive counts was based solely on the vicarious liability theory of *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The person charged with actually committing the crimes was one Parker.

The jury acquitted the defendant of the substantive offenses but was unable to reach a verdict on the conspiracy count, thus prompting the trial judge to declare a mistrial.

When the government sought to retry the defendant, he filed a motion to dismiss, claiming that retrial would violate the doctrine of collateral estoppel.

In upholding appellant's claim, the *Larkin* Court quoted from *Ashe v. Swenson,* 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970):

> Where a previous judgment of acquittal was based on a general verdict, as is usually the case, this approach requires a court "to examine the record of a prior proceeding, taking into account the pleading, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."

Larkin sought to foreclose from consideration in his second trial the issue whether

he was a member of a conspiracy. The Court first held that no rational jury could have acquitted Larkin of the substantive crimes on the basis of a lack of conspiracy while at the same time fail to acquit him on the conspiracy charge itself. It then looked to find where the jury's verdict rested.

The Court noted four possible grounds for the jury's verdict. It concluded that the jury might have found: (1) that Larkin did not conspire with Parker; (2) that Parker did not commit the substantive offenses charged; (3) that Parker did not commit the substantive offenses in furtherance of the alleged conspiracy with Larkin; or (4) that Larkin did not foresee that Parker would commit the substantive crimes as a necessary or natural result of the conspiracy between the two.

The court then scrutinized each of these possibilities. As to number 1, the court earlier concluded that lack of conspiracy could not be the ground; as to number 3, there was ample evidence that the acts were in the course of and in furtherance of the alleged conspiracy. Finally, the Court concluded that only reasons 2 and 4 could possibly explain the jury verdict.

Moreover, the Court held that under either of these alternative grounds for the jury's verdict of acquittal on the substantive counts, retrial on the conspiracy count was foreclosed for the following reason:

At the proposed second trial, the Government would have to show that Larkin and Parker agreed to embezzle union funds and to falsify union records. If Larkin and Parker agreed to commit those acts, it must necessarily be true *both* that the commission of those crimes would be foreseeable to Larkin *and* that the crimes were committed by Parker in furtherance of a conspiracy between him and Larkin. However, the first jury's acquittal necessarily means that at least one of those factual propositions has been decided adversely to the Government.

*United States v. Larkin,* 605 F.2d 1360, 1371 (5th Cir.1979) (emphasis in original.)

Appellant insists that this case is on all fours with *Larkin.* Applying the *Larkin* analysis, appellant argues that there are only five possible explanations for the jury's verdict in the first case:

(1) Appellant was never a member of the conspiracy;

(2) The substantive offenses were not committed during the existence of the conspiracy;

(3) The substantive offenses were not committed in furtherance of the conspiracy;

(4) Appellant did not foresee the commission of the substantive crimes;

(5) The appellant had withdrawn from the conspiracy at the time the substantive offenses were committed.

Appellant contends that reasons 4 and 5 are the only possible explanations for the jury's verdict, and that reason 5 is the most plausible explanation, since appellant presented evidence of his withdrawal from the conspiracy, and the trial court instructed the jury that a conspirator who withdraws cannot be prosecuted for conspiracy if he terminates his involvement in the conspiracy beyond the statute of limitations.

Appellant insists that under either explanation 4 or 5, retrial on the conspiracy counts would be prohibited. As to reason 4, appellant cites *Larkin* in support of his argument that at his second trial the government would have to show that the substantive offenses were foreseeable for him to be guilty of the conspiracies charged in the indictment. We disagree.

■ It is well settled that the commission of a substantive offense and a conspiracy to commit it are separate and distinct offenses. *Pereira v. United States,* 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *Pinkerton v. United States,* 328 U.S. 640, 643, 66 S.Ct. 1180, 1181, 90 L.Ed. 1489 (1946); *United States v. Ballard,* 586 F.2d 1060, 1064 (5th Cir.1978); *King v. United States,* 565 F.2d 356 (5th Cir.1978). Thus, a defendant can be convicted of conspiracy but acquitted of the substantive crimes. *United States v. Fuiman,* 546

F.2d 1155, 1158 (5th Cir.1977). And an acquittal on the substantive charge of possession does not prevent the government from attempting to establish the guilt of the accused as to the separate offense of conspiracy to possess. *Yawn v. United States, supra,* at 237 (citing *Pinkerton v. United States, supra.*) Moreover, a defendant may be guilty of conspiracy although he is incapable of actually committing the substantive offense. *U.S. v. Tenorio-Angel,* 756 F.2d 1505 (11th Cir.1985). Whether the object of the conspiracy is achieved is immaterial to the commission of the crime of conspiracy. *United States v. Nicoll,* 664 F.2d 1308 (5th Cir., Unit B, 1982).

■■ Further, in order to be guilty of conspiracy, a defendant need not have knowledge of all the substantive crimes charged in the indictment; it is enough that he knew the essential nature of the conspiracy. *United States v. Payne,* 750 F.2d 844, 859 (11th Cir.1985); *United States v. Gold,* 743 F.2d 800, 824 (11th Cir.1984); *United States v. Bascaro,* 742 F.2d 1335, 1359 (11th Cir.1984); *United States v. James,* 528 F.2d 999, 1011 (5th Cir.), *cert. denied,* 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326 (1976).

Thus, there is no requirement that before a defendant can be charged with conspiracy he must have foreseen the substantive crimes charged in the indictment. Such a rule would blur the distinctness of the crime of conspiracy and the crime of committing a substantive offense.

Further, since a jury can convict a defendant of conspiracy and at the same time acquit him of the substantive count, we see no reason why the jury cannot achieve the same result in two trials rather than one so long as facts necessarily determined in the first trial are not relitigated in the second. Nor do we read *United States v. Larkin* as requiring a different result. There, liability on the substantive counts was based solely on the *Pinkerton* vicarious liability doctrine. *United States v. Larkin, supra,* at 1363.

*Pinkerton* allows a conspirator to be charged with the crimes committed by a co-conspirator so long as the crimes were committed in furtherance of the conspiracy, *United States v. Pinkerton, supra,* at 645, unless the crime "did not fall within the scope of the unlawful project, or was merely a part of the ramifications of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement." *Id.* at 647–48; *U.S. v. Johnson,* 730 F.2d 683, 690 (11th Cir., *cert. denied,* —— U.S. ——, 105 S.Ct. 186, 83 L.Ed.2d 119 (1984); *U.S. v. Moreno,* 588 F.2d 490, 493 (5th Cir.), *cert. denied,* 441 U.S. 936, 947, 99 S.Ct. 2061, 2168, 60 L.Ed.2d 666, 1049 (1979).

Unlike the defendant in *Larkin,* appellant was charged with actually committing the substantive crimes as well as with *Pinkerton* criminal responsibility. We believe that this distinguishes the present case from *Larkin.* Moreover, we do not believe that inherent in the jury's acquittal on the substantive counts was a finding that appellant was not a member of the conspiracy. Accordingly, we hold that the doctrine of collateral estoppel did not bar appellant's retrial.

The judgment is REVERSED.