UNITED STATES of America, Plaintiff,

v.

**ONE PARCEL OF REAL ESTATE LOCATED AT 13143 S.W. 15TH LANE, DADE COUNTY, MIAMI, FLORIDA AND ALL APPURTENANCES THERETO AND IMPROVEMENTS THEREON, AND TWENTY–FIVE THOUSAND EIGHT HUNDRED FORTY–FIVE DOLLARS ($25,845.00) IN U.S. CURRENCY, Defendant.**

No. 91–1212–CIV.

United States District Court,
S.D. Florida.

Dec. 16, 1994.

Gerardo M. Simms, Asst. U.S. Atty., Miami, FL for plaintiff.

Carl Lida, Plantation, FL for defendant.

### ORDER ON APPEAL FROM JUDGMENT OF MAGIS- TRATE JUDGE

ATKINS, Senior District Judge.

THIS MATTER is before the court on claimant Jose Oliva's Appeal from judgment of the magistrate judge. After careful consideration of the briefs on appeal, and having heard oral argument on December 15, 1994, it is

ORDERED AND ADJUDGED that the judgment of the magistrate judge is *AF- FIRMED IN PART, REVERSED IN PART, AND REMANDED.*

### I. INTRODUCTION

This appeal from a judgment of civil forfeiture permits the court to address the interplay between criminal prosecutions and civil forfeiture proceedings which are based on the same operative facts. The magistrate judge denied claimant Jose Oliva's Motion to Dismiss on Double Jeopardy grounds, as well as with respect to Oliva's claim that forfeiture of the defendant property would constitute an excessive fine under the Eighth Amendment. The magistrate judge also granted the government's motion for summary judgment, ruling that Oliva was collat- erally estopped from relitigating the issues of fact related to his and the defendant property's involvement in the narcotics transactions for which Oliva was convicted.

Oliva appeals those rulings, asserting that the magistrate erred in: (1) denying his motion to dismiss on Double Jeopardy grounds; (2) denying his motion to dismiss because the forfeiture of the defendant property would violate the Excessive Fines Clause of the Eighth Amendment; and (3) granting the government's motion for summary judgment. For the reasons discussed below, the judgment of the magistrate judge is affirmed in part, reversed in part, and remanded.

### II. FACTUAL AND PROCEDURAL HISTORY

First, by way of explanation, the court notes that this appeal comes to it in an unusual way. Pursuant to 28 U.S.C. § 636(c), the parties in this case consented to trial before United States Magistrate Judge Palermo, and authorized the magistrate judge to render final judgment. Additionally, pursuant to 28 U.S.C. § 636(c)(4), the parties consented to appeal on the record to this court, rather than directly to the United States Court of Appeals for the Eleventh Circuit. Section 636(c)(4) provides that, upon agreement of the parties, the appeal shall be taken in the same manner as on an appeal from a judgment of a district court to a court of appeals. 28 U.S.C. § 636(c)(4). Under such circumstances, the district court has the authority to affirm, reverse, modify, or remand the magistrate's judgment. *Id.* Therefore, this court is acting as an appellate court in this case.

### A. The Criminal Case

Oliva, owner of the defendant property and the claimant-appellant in this case, was indicted in early 1991 for various narcotics offenses. The case was styled *U.S. v. Oliva,* case number 91–208–CR–NESBITT.

A jury convicted Oliva of possession with intent to distribute cocaine base in September 1991, but acquitted him of the conspiracy count charged in the indictment. The sentencing judge sentenced Oliva to 188 months

incarceration and five years supervised release. The sentencing judge also assessed Oliva a $50.00 payment, but stated that given the length of Oliva's sentence, she would not impose a fine.

The facts surrounding the conviction in *U.S. v. Oliva,* case number 91–208–CR–NES-BITT, are as follows. On March 14, 1991, Oliva's co-defendant, Luis Restrepo, drove to Oliva's house (the defendant real property) with two suitcases. Oliva helped carry the suitcases from the car into his home. Once inside the home, Oliva gave Restrepo a bag with one kilogram of cocaine in it. Restrepo then left Oliva's home and was arrested in possession of the bag and cocaine a few blocks from Oliva's house.

Federal agents conducted a search of Oliva's house pursuant to a search warrant. The search yielded two suitcases containing 26 kilograms of cocaine base, which the agents found hidden in a bed's wooden frame. The agents also found a bundle of cash, ($9,000.00) in a safe, another bundle ($750.00) in a dresser, a third bundle ($16,-095.00) and small cocaine scales in another safe, as well as a cocaine sifter and other cocaine paraphernalia in the master bedroom. Each bundle of cash contained traces of cocaine.[1] Oliva told the agents that he was being paid for storing the cocaine, but denied knowledge of any of the found items when he testified at trial.

## B. The Civil Forfeiture Proceedings

On June 10, 1991, the government filed a complaint for forfeiture against the defendant real property pursuant to 21 U.S.C. § 881(a)(7). The civil forfeiture complaint was based on the same facts that formed the basis for Oliva's criminal indictment and his later conviction for possession of cocaine with intent to distribute.[2]

Oliva, along with other claimants, filed a motion to dismiss for lack of probable cause on July 17, 1992. The magistrate denied the motion. Then Oliva moved to dismiss based on the homestead exemption in the Florida Constitution. That motion was also denied.

Finally, on March 17, 1993, the government filed a motion for summary judgment. Before the magistrate judge ruled on that motion, however, Oliva filed another motion to dismiss (which forms the basis for this appeal), in which he claimed that the prosecution of this civil forfeiture complaint violated the Double Jeopardy Clause of the Fifth Amendment, and that forfeiture of his home would constitute an excessive fine under the Eighth Amendment.

In May 1994, the magistrate judge denied Oliva's most recent motion to dismiss and, in a separate order, granted the government's motion for summary judgment. Oliva then filed an appeal of those orders in this court. However, this court dismissed for lack of jurisdiction, since no final order or judgment had been entered by the magistrate judge.[3] However, the court informed Oliva that he was entitled to refile his appeal once the magistrate entered final judgment.

The magistrate judge entered the final order of forfeiture regarding the defendant

---

1. The court acknowledges that the Ninth Circuit recently upheld an order in favor of a claimant in a forfeiture case regarding a large amount of cash, in part, because a study showed that 75% of all currency in the Los Angeles area is tainted with cocaine residue (or another controlled substance). *U.S. v. $30,060 in U.S. Currency,* 39 F.3d 1039 (9th Cir.1994). The drug residue on the currency, and a questionable explanation for having the cash, was the only evidence the government presented in favor of forfeiture. *Id.* That the currency was drug-tainted was not of great significance, in light of the study. *Id.* Therefore, since no other evidence indicated that the money was used to facilitate a drug transaction, the Ninth Circuit refused to order forfeiture. *Id.* Despite the interesting nature of the study

regarding currency in Los Angeles, this case is factually different. Here, there were myriad other factors indicating that the defendant property was involved in a drug transaction, as indicated throughout this order.

2. The defendant currency was added to the complaint at a later date. However, this appeal involves only the defendant real property since the parties reached a settlement regarding the cash.

3. Under 28 U.S.C. § 636(c)(4), any appeal from the magistrate should be taken in the same manner as an appeal from a district court to a court of appeals. Therefore, only appeals from final orders can be considered by this court.

real property[4] on August 9, 1994. Oliva filed a second Notice of Appeal on August 24, 1994 and filed his brief in support of the appeal on October 24, 1994. The government filed its brief in response on November 9, 1994. The court heard oral argument on December 15, 1994.

## III. ANALYSIS

### A. Motion to Dismiss re: Double Jeopardy Grounds

Oliva asserts that because the government chose to institute a civil forfeiture proceeding, in addition to a criminal prosecution based on the exact same facts, and because he was already punished for committing those acts in the criminal proceeding, maintaining the civil forfeiture proceedings against him constitutes a violation of the Double Jeopardy Clause of the Fifth Amendment. Proceeding as the government did in this case prevents a single jury from deciding all relevant issues of fact that apply to both the criminal and civil proceedings, according to Oliva.[5]

"[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." U.S. v. Halper, 490 U.S. at 440, 109 S.Ct. at 1897 (citing North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)). It is the third abuse that is relevant here.

The parties do not dispute that Oliva was punished for possessing cocaine base with intent to distribute when he was sentenced to 188 months incarceration and five years supervised release. It is also undisputed that the same conduct for which Oliva was punished in case number 91–208–CR–NESBITT forms the basis for this civil forfeiture proceeding. Therefore, the issue is whether this civil forfeiture proceeding constitutes a second punishment under the Double Jeopardy Clause.

Halper holds that when a civil remedy that can be considered punitive or remedial is sought after a criminal punishment, and is sought not to compensate the government, but solely as punishment, the Double Jeopardy Clause is implicated. 490 U.S. at 449, 109 S.Ct. at 1902. However, the Halper court limited its holding to "the rare case, the case such as the one before [it], where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." Id.

The Supreme Court then explicitly determined, in a plurality opinion in Austin v. U.S., —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), that civil forfeiture under 21 U.S.C. § 881(a)(7)—the section relevant to this court's analysis—constitutes, at least in part, punishment. See Austin, —— U.S. at ——, 113 S.Ct. at 2810 (addressing whether civil forfeiture violates the Excessive Fines Clause of the Eighth Amendment, the plurality recognized that a civil sanction can serve many purposes—remedial, retributive, or deterrent—but that the civil sanction permitted by 21 U.S.C. § 881(a)(7) also imposes punishment). Therefore, Oliva's contention that a civil forfeiture proceeding following a criminal conviction based on the same facts violates the Double Jeopardy Clause is not ill-grounded. However, despite the result that the Austin holding would seem to dictate in this case, the Supreme Court's finding that civil forfeiture under 21 U.S.C. § 881(a)(7) constitutes punishment does not end the inquiry, for the Eleventh Circuit has also spoken on this precise issue.

In U.S. v. One Single Family Residence Located at 18755 North Bay Road, the Elev-

---

4. As stated above, the parties reached a settlement with respect to the currency.

5. Oliva relies on U.S. v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), Department of Revenue of Montana v. Kurth, —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), and U.S. v. $405,089.23 U.S. Currency, 33 F.3d 1210 (9th Cir.1994) for the proposition that this civil forfeiture proceeding violates the Double Jeopardy Clause. In relying on those cases, Oliva asks this court to ignore U.S. v. One Single Family Residence Located at 18755 North Bay Road, 13 F.3d 1493 (11th Cir.1994). However, counsel for claimant did acknowledge at oral argument that this court is bound by Eleventh Circuit decisions and not those of the Ninth Circuit.

enth Circuit had occasion to determine whether a civil forfeiture proceeding "violates the Double Jeopardy Clause of the Fifth Amendment because [the claimant] had been previously punished in connection with his criminal conviction for the same gambling offense upon which th[e] forfeiture [wa]s based." 13 F.3d 1493, 1499 (11th Cir.1994). The claimant in *18755 North Bay Road* made the same arguments Oliva makes here. But, the claimant in *18755 North Bay Road* did not succeed.

The Eleventh Circuit found that *Halper*, by its own holding, did not "prevent the Government from seeking and obtaining both the full civil penalty and the full range of statutorily authorized criminal penalties *in the same proceeding*." *Id.* (quoting *Halper*, 490 U.S. at 450, 109 S.Ct. at 1903) (emphasis added). The Eleventh Circuit went on to hold that where the government *simultaneously* pursues criminal and civil sanctions against someone based on the same conduct, those two proceedings can be determined to be a single, coordinated prosecution which will not violate the Double Jeopardy Clause. *Id.* The dividing line, for the Eleventh Circuit, between a single, coordinated prosecution (which is permissible) and separate civil and criminal proceedings (which are not) seems to be when the government acts "abusively by seeking a second punishment because of dissatisfaction with the punishment levied in the first action." *Id.*

■ As in this case, in *18755 North Bay Road*, the criminal and civil proceedings were instituted at different times. Unlike this case, the civil forfeiture proceedings in *18755 North Bay Road* were instituted before the criminal proceedings; the government filed the civil forfeiture complaint in October 1990, while the claimants were not indicted until March 1991. However, as in this case, the government filed a motion for summary judgment in the civil forfeiture case *after* some of the claimants were convicted and "punished" in the criminal case, basing the summary judgment motion on the collateral effect of the criminal convictions. Therefore, this case is factually similar to *18755 North Bay Road.*

Despite the somewhat separateness of the two proceedings in *18755 North Bay Road,* the Eleventh Circuit held that they constituted a single, coordinated proceeding. *Id.* Therefore, the civil forfeiture suit was not barred on double jeopardy grounds because the government was not really seeking two separate punishments. *Id.*

Consequently, since the Eleventh Circuit's decision is binding, this court is constrained to find that the criminal prosecution and the civil forfeiture proceedings involving Oliva's same conduct constitute a single, coordinated proceeding for the purposes of double jeopardy analysis. This civil forfeiture proceeding is not, therefore, barred by the Double Jeopardy Clause.[6]

## B. Motion to Dismiss re: Excessive Fines Clause

Oliva also contends that the forfeiture of his home would constitute an excessive fine in violation of the Eighth Amendment because he was already punished via his sen-

---

**6.** As stated above, Oliva implores this court to look to the Ninth Circuit's decision in *U.S. v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (9th Cir.1994). The Ninth Circuit reached the exact opposite result from the Eleventh Circuit when considering whether separate yet parallel civil forfeiture proceedings under 21 U.S.C. § 881(a)(6) and criminal prosecutions violate the Double Jeopardy Clause.

The Ninth Circuit reasoned that the Double Jeopardy Clause, at its most fundamental level, protects an accused from being forced to defend himself against repeated attempts to exact one or more punishments for the same offense. *Id.* at 1215. Therefore, under facts similar to this case—the government obtained a criminal indictment first, then instituted civil forfeiture pro-

ceedings based on the same conduct, and continued to pursue the civil forfeiture case after the claimants were convicted—the Ninth Circuit held that proceedings instituted at different times, tried at different times before different factfinders, presided over by different district judges, and resolved by separate judgments clearly constitute separate proceedings prohibited by the Double Jeopardy Clause. *Id.* at 1216.

In so holding, the Ninth Circuit stated that the decision of the Eleventh Circuit in *18755 North Bay Road* "contradict[ed] controlling Supreme Court precedent as well as common sense." *Id.* Nevertheless, despite the logic of the Ninth Circuit's reasoning, this court is bound by the Eleventh Circuit's decision in *18755 North Bay Road.*

tence in the criminal case and because the sentencing judge stated that she would not impose a monetary fine on Oliva.

The concept of a forfeiture being an excessive fine is a relatively new one in civil forfeiture law. The Supreme Court recently held in *Austin v. U.S.*, that since civil forfeiture under 21 U.S.C. § 881(a)(7) constitutes punishment, it also can be "excessive" within the meaning of the Excessive Fines Clause of the Eighth Amendment. —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). However, the Supreme Court expressly declined to formulate a test to determine when such a forfeiture is "excessive." Rather, the justices left it to the lower courts to fashion a test for determining "excessiveness" under the Eighth Amendment in the civil forfeiture context. —— U.S. at ——, 113 S.Ct. at 2812.

In his concurring opinion, Justice Scalia attempted to guide the lower courts in fashioning a test. He advocated an "instrumentality test" by which a court could determine whether any given forfeiture was constitutionally excessive. This test focusses primarily on the relationship between the forfeited property and the offense, as opposed to considering only the value of the property in relation to the offense. "The question is not *how much* the confiscated property is worth, but *whether* the confiscated property has a close enough relationship to the offense." —— U.S. at ——, 113 S.Ct. at 2815. In other words, is the relationship of the property to the offense "close enough to render the property, under traditional standards, 'guilty' and hence forfeitable?" *Id.* However, since this test was suggested in a concurring opinion, this court is not bound to apply it.

The Eleventh Circuit has not explicitly created a test by which to determine excessiveness since the Supreme Court's invitation to do so in *Austin.* However, this court is guided by the Eleventh Circuit's opinion in *18755 North Bay Road,* 13 F.3d 1493. In that case, several of the claimants were convicted of various gambling offenses in a sepa-

rate criminal proceeding. The defendant property was used in connection with those offenses.

The Eleventh Circuit acknowledged that the nexus requirement that Justice Scalia suggested be the primary inquiry was not discounted as a relevant factor by the court. *Id.* at 1498. But, the court went on to state that it did not read *Austin* to limit lower courts from considering other factors in determining whether any particular forfeiture is excessive. *Id.* The court then, without articulating a test, considered the value of the defendant property (approximately $150,000.00) in comparison to the gambling offenses of which the claimants were convicted. Because the facts of the case were such that the claimants held only sporadic poker games at the defendant property, the court held that forfeiture of the $150,000.00 home would constitute a disproportionate penalty under the Excessive Fines Clause of the Eighth Amendment, thereby implying that a comparison of the value of the defendant property to the nature of the offense should be made. *Id.* at 1498–99.

Taking the cue from the Eleventh Circuit in *18755 North Bay Road,* this court anticipates that the appropriate inquiry for determining whether a forfeiture is constitutionally excessive, in this circuit at least, would include a two-pronged test.[7] The first step would be to determine the nexus between the property and the offense, i.e., the "instrumentality test" Justice Scalia discussed in *Austin,* and the second step would be to engage in a "proportionality" analysis, as the Eleventh Circuit seemed to do in *18755 North Bay Road.* The court states the test as follows:

(1) Was there a substantial connection between the defendant property and the offense in question? If so,

(2) Is the forfeiture of the defendant property a grossly disproportionate penalty given the nature of the offense involved?[8]

7. The court also looks to the opinion of Judge Albritton in *U.S. v. One Parcel Property Located at 427 and 429 Hall Street,* 853 F.Supp. 1389 (M.D.Ala.1994) in stating this test.

8. By stating this two-pronged test, the court does not mean to foreclose other factors from being considered in an Excessive Fines analysis. The court recognizes that other cases may present factual circumstances which require either a de-

See U.S. v. One Parcel Property Located at 427 and 429 Hall Street, 853 F.Supp. 1389 (M.D.Ala.1994) ("427 and 429 Hall Street II").

■ The first step of the test essentially follows Justice Scalia's inquiry regarding whether the relationship between the property and the offense is close enough to render the property guilty and hence forfeitable. See Austin, — U.S. at —, 113 S.Ct. at 2815. The government has the burden of establishing this substantial connection, once the claimant raises the specter of excessiveness.

If the government can prove a substantial connection, the burden then shifts to the claimant to demonstrate that the forfeiture would amount to a grossly disproportionate penalty in light of the nature of the offense. This entails weighing the nature of the offense committed against the value of the property. See 427 and 429 Hall Street II, 853 F.Supp. at 1400; see also 18755 North Bay Road, 13 F.3d at 1498–99.[9]

Although the magistrate judge concluded that "there was a close enough relationship between the real property and the offense to render the property guilty of having played an integral part in facilitating the possession with intent to distribute," (Order Denying Motions to Dismiss at p. 9), the magistrate judge did not have the benefit of an articulated test by which to measure the alleged excessiveness of the forfeiture of Oliva's home.

Moreover, given the nature of the excessiveness test, i.e., it requires the court to look beyond the four corners of the complaint, this issue is not properly raised as a motion to dismiss. And, to even reach an excessiveness analysis, the court must have reached a determination that the property should be forfeited. See 427 and 429 Hall Street II, 853 F.Supp. at 1400. There is no point in addressing whether a forfeiture is excessive unless the property is to be forfeited.[10] Therefore, the court remands the issue of whether the forfeiture of Oliva's home is excessive under the Eighth Amendment to the magistrate judge to apply the test articulated above.

### C. Government's Motion for Summary Judgment

Because an analysis of whether a particular forfeiture is excessive requires, logically, an initial determination that a forfeiture is warranted, the court will address the magistrate judge's grant of summary judgment in favor of the government. The magistrate judge based his ruling on the grounds that Oliva was collaterally estopped from relitigating the issue of his and the defendant property's involvement in the narcotics transaction for which Oliva was convicted.

Summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only disputed issues of fact will preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Title 21, United States Code § 881(a)(7)—the statute at issue in this appeal—requires the forfeiture of real property when there is probable cause to believe that the property was used to facilitate a violation of 21 U.S.C. § 801, et seq., punishable by imprisonment for more than one year.

■ Collateral estoppel prevents a litigant from relitigating issues already resolved

viation from or additions to the above-stated test. However, in this instance, this is the test that should be used.

**9.** The "grossly disproportionate" standard comes from various criminal forfeiture cases. E.g., Alexander v. U.S., — U.S. —, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993); see also U.S. v. Monroe, 866 F.2d 1357, 1366 (11th Cir.1989) (stating that punishment was not so grossly disproportionate in relation to offense so as to implicate Eighth Amendment). However, since the Supreme

Court has held that the Excessive Fines Clause of the Eighth Amendment applies to civil cases, as well as criminal cases, the "grossly disproportionate" standard should likewise apply to civil cases. See Austin, supra.

**10.** The magistrate judge's ruling that the government is entitled to forfeiture on the government's motion for summary judgment is discussed below.

against him in a prior lawsuit in which he had a full and fair opportunity to litigate the issues, and which determination of such issues was necessary in reaching the earlier judgment. *U.S. v. One Parcel Property Located at 427 and 429 Hall Street,* 842 F.Supp. 1421, 1428 (M.D.Ala.1994) (*"427 and 429 Hall Street I"*) (citing *U.S. v. "Monkey," a Fishing Vessel,* 725 F.2d 1007, 1010–11 (5th Cir. 1984); *U.S. v. $31,697.59 Cash,* 665 F.2d 903, 905 (9th Cir.1982); *U.S. v. $80,080.00 in U.S. Currency,* 779 F.Supp. 169, 172 (N.D.Ga. 1991)). Therefore, if certain factual issues that apply to both the criminal case and this civil forfeiture case were resolved in favor of the government at Oliva's criminal trial, Oliva cannot challenge those findings in this proceeding. *427 and 429 Hall Street I,* 842 F.Supp. at 1428 n. 14 (citing *U.S. v. Schumann,* 861 F.2d 1234, 1237 (11th Cir.1988)); *See also Matter of Raiford,* 695 F.2d 521, 523 (11th Cir.1983) ("The use of a criminal conviction as conclusive of an issue in subsequent civil litigation, though not universally accepted, is well established today.").

■ The following facts were established at Oliva's criminal trial. Oliva possessed at least 26 kilograms of cocaine base with the intent to distribute. That cocaine base was found in two suitcases which were delivered to Oliva's home, the defendant property. The cocaine-filled suitcases were found underneath Oliva's bed which had to be partially dismantled to store the suitcases. Oliva's bed was located in the defendant property.

Oliva had a full and fair opportunity to dispute these facts at his criminal trial. Further, the establishment of these facts was necessary to the judgment of conviction rendered in Oliva's criminal case; if the jury did not believe that two suitcases full of cocaine base were found in claimant's possession in his home, they would have acquitted Oliva. Thus, Oliva cannot challenge those facts here. *Id.* Given that, there are no material facts in dispute here; probable cause to believe that the defendant real property was used to facilitate a narcotics transaction was established conclusively in Oliva's criminal trial. Consequently, the grant of summary judgment in favor of the government was correct.

■ However, a determination of forfeitability under 21 U.S.C. § 881(a)(7) does not foreclose an analysis of whether such forfeiture would be excessive under the Eighth Amendment. Therefore, the issue of excessiveness must still be addressed, in accordance with section III.B. above.

## IV. CONCLUSION

Based on the foregoing reasons, the court finds that the Double Jeopardy Clause of the Fifth Amendment does not bar this civil forfeiture suit. Further, although probable cause to believe that the defendant real property was used to facilitate a violation of 21 U.S.C. § 801 *et seq.* exists, as established in Oliva's criminal trial, a determination under the test articulated today as to whether the forfeiture would violate the Excessive Fines Clause of the Eighth Amendment must still be made.

Affirmed in part, reversed in part and remanded.

DONE AND ORDERED.