**UNITED STATES of America, Plaintiff,**

v.

**Edward Nathan LEVINE, Defendant.**

No. 89–29(S3)–Cr–J–16.

United States District Court,
M.D. Florida,
Jacksonville Division.

July 28, 1995.

James R. Klindt, Ernst D. Mueller, U.S. Attorney's Office, Jacksonville, FL, for plaintiff.

William J. Sheppard, Jacksonville, FL, for defendant.

## OPINION

### JOHN H. MOORE, II, Chief Judge.

This cause is before the Court on Defendant's motions to dismiss the indictment on the grounds of double jeopardy (Doc. # 1364) and the expiration of the statute of limitations (Doc. # 1365) filed June 16, 1995. The United States filed responses in opposition thereto on July 17, 1995. Upon due consideration of the motions and the legal premises therein, the Court finds that the motions should be denied.

### I. Background Facts

An indictment was returned against the Defendant on February 24, 1989 charging him with one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, and one count of conspiracy to import cocaine in violation of 21 U.S.C. § 963. The superseding indictment alleges a large-scale conspiracy to distribute and import cocaine

by Columbia's Medellin drug cartel from 1974 to 1991. The Defendant is alleged to have participated in several overt acts in furtherance of this conspiracy in February and March of 1978. However, the Defendant became a fugitive from justice shortly after indictment until his arrest in Oregon on February 28, 1995 under the alias "Joel Watnick".

However, prior to the Defendant's indictment in this matter, the United States instituted two separate civil forfeiture actions pursuant to 21 U.S.C. § 881(a)(6)[1] against certain funds, as money intended to facilitate or traceable to a drug transaction, in the Northern District of California. The Defendant, an alleged longtime narcotics trafficker, had rented several safety deposit boxes under the alias "Michael Stark". The United States seized $2,417,570 from three safety deposit boxes on January 11, 1988 and $3,547,670 from another six safety deposit boxes on October 7, 1988. The United States filed complaints for civil forfeiture against the $2,417,570 and the $3,547,670. Since the Defendant became a fugitive from justice, he failed to appear for a deposition regarding his claim for the $2,417,570 and no claim was filed for the $3,547,670. Therefore, the Defendant initially filed a claim and an answer in the civil forfeiture action against the $2,417,570, but notwithstanding this claim default judgments were entered against the $3,547,670 on August 4, 1989 and against the $2,417,570 on November 16, 1989.

### II. Discussion

#### A. Double Jeopardy

The Defendant argues that the present criminal prosecution constitutes successive punishment barred by the Double Jeopardy Clause of the Fifth Amendment. Double jeopardy protects against: 1) a second prosecution for the same offense after acquittal, 2) a second prosecution for the same offense after conviction, and 3) multiple punishments for the same offense. *United States v. Halper,* 490 U.S. 435, 439, 109 S.Ct.

---

1. "The so-called narcotics proceeds forfeiture statute, 21 U.S.C. § 881(a)(6)," applies not only to the proceeds of illegal activity, but to "all money 'furnished or intended to be furnished by any person in exchange for a controlled sub-

stance' as well as to any money which is 'used or intended to be used to facilitate any violation of this subchapter.'" *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210, 1221 (9th Cir.1994), *amended* and *reh'g denied,* 56 F.3d 41 (1995).

1892, 1897, 104 L.Ed.2d 487 (1989) (citation omitted). " 'If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence.' " *Id.* (quoting *Ex parte Lange*, 18 Wall. 163, 168, 21 L.Ed. 872 (1874)). In the context of a successive criminal prosecution and civil forfeiture, or vice versa,[2] the Double Jeopardy Clause would preclude the subsequent proceeding if there would be: 1) a punishment, 2) based upon the same offense, 3) in a separate legal proceeding, and 4) in which jeopardy has already attached. *United States v. Dixon*, — U.S. —, —, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993) (same elements test, or the *Blockburger* test, provides that a successive prosecution and punishment is not based upon the same offense and thus, not barred by double jeopardy if each offense contains an element not contained in the other); *Halper*, 490 U.S. at 444–50, 109 S.Ct. at 1900–02 (government may seek full civil penalty and full range of statutorily authorized criminal penalties in same proceeding but successive civil penalty constitutes punishment prohibited by the Double Jeopardy Clause if it bears no rational relation to the goal of compensating government for its loss); *Serfass v. United States*, 420 U.S. 377, 387, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975) (constitutional prohibition against double jeopardy has no application unless jeopardy has already attached).

■ The parties do not dispute that the present criminal prosecution is based upon the same offense underlying the two civil forfeiture actions. In these proceedings, default judgments were entered against the $3,547,670 on August 4, 1989 and against the $2,417,570 on November 16, 1989. The Defendant argues that these forfeitures constitute "punishment" within the meaning of the Double Jeopardy Clause. The issue of whether the civil forfeiture constitutes "punishment" is the subject of considerable debate since the trilogy of Supreme Court decisions in *Halper*, *Austin v. United States*, — U.S. —, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and *Dep't of Revenue of Montana v. Kurth Ranch*, — U.S. —, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). A reading of these decisions provide that a civil sanction which does not serve solely a remedial purpose, but also serves either a retributive or deterrent purpose, constitutes "punishment". *Halper*, 490 U.S. at 448, 109 S.Ct. at 1902. A civil sanction, however, may be remedial if it bears a "rational relation to the goal of compensating the government for its loss." *Id.*

■ Otherwise, the civil sanction can no longer be considered solely remedial and can only be explained as serving either a retributive or deterrent purpose and thus, is punishment. *Id.* "Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goal of punishment." *Id.*, at 446–50, 109 S.Ct. at 1901–02. Accordingly, determining whether the sanction imposed is remedial or criminal necessitates the assessment of the character of the sanction. *Halper*, 490 U.S. at 446, 109 S.Ct. at 1901. "It is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated." *Id.*, at 446 n. 7, 109 S.Ct. at 1901 n. 7.

In respect to the Eighth Amendment's Excessive Fines Clause, the *Austin* Court held that civil forfeiture *in rem* pursuant to 21 U.S.C. §§ 881(a)(4) and (a)(7) constitutes punishment. — U.S. at — – —, 113 S.Ct. at 2811–12. The *Austin* Court, while assessing §§ 881(a)(4) and (a)(7) as a whole rather than focusing on the individual case,[3] concluded that even assuming civil forfeiture under these provisions serve some remedial purpose, it must necessarily also serve a retributive or deterrent purpose and thus,

---

**2.** The sequential order of the "civil" and "criminal" proceedings is irrelevant to this analysis. *United States v. Reed*, 937 F.2d 575, 577 n. 3 (11th Cir.1991).

**3.** The Supreme Court stated that it made sense to focus on §§ 881(a)(4) and (a)(7) as a whole, rather than focusing on the individual case, when determining whether the civil sanction

serves the purpose of punishment because the value of the property forfeited under these provisions "vary so dramatically that any relationship between the Government's· actual costs and the amount of the sanction is merely coincidental." *Austin*, — U.S. at — n. 14, 113 S.Ct. at 2812 n. 14.

constitutes punishment. *Id.*, at ——, 113 S.Ct. at 2812. The Supreme Court reasoned that this holding is compelled because forfeiture was historically considered punishment. § 881 encompasses an "innocent owner" defense which focuses on the culpability of the owner in a manner resembling punishment, and the forfeiture is tied directly to the commission of drug offenses. *Id.*, at ——, 113 S.Ct. at 2810. Further, the Supreme Court noted that the legislative history confirms the punitive nature of §§ 881(a)4) and (a)(7). *Id.*, at ——, 113 S.Ct. at 2811. Accordingly, civil forfeiture *in rem* pursuant to §§ 881(a)4) and (a)(7) primarily intends to punish the property owner and therefore, constitutes punishment subject to the limitations of the Eighth Amendment's Excessive Fines Clause. *Id.*, at ——, 113 S.Ct. at 2812.

Finally, the Supreme Court held in *Kurth Ranch* that a state imposed tax on confiscated and subsequently destroyed drugs constituted punishment when it is characterized by a high tax rate and deterrent purpose, conditioned on the commission of a crime, and is levied on goods that the taxpayer neither owns nor possesses when the tax is imposed. —— U.S. at ——–——, 114 S.Ct. at 1947–48. The Supreme Court reasoned that although taxes are normally levies for the purpose of raising revenue, the combination of these characteristics "fairly characterize[s]" the tax as punishment. *Id.*, at ——, 114 S.Ct. at 1948. Accordingly, a civil sanction in the form of a tax may constitute "a second punishment within the contemplation of a constitutional protection [double jeopardy] that has 'deep roots in our history and jurisprudence.'" *Id.* (citation omitted).

The result of this Supreme Court trilogy is a deep split between the Fifth and Ninth Circuit Courts of Appeals on the methodology of addressing the issue whether civil forfeiture of drug proceeds pursuant to § 881(a)(6) is remedial or punitive and thus,

punishment for double jeopardy purposes. In *United States v. Tilley,* 18 F.3d 295, 297 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994), the government filed a complaint for civil forfeiture *in rem* pursuant to 21 U.S.C. §§ 881(a)(6) and (a)(7). The defendants entered into a stipulated forfeiture agreement with the United States in which they agreed to forfeit various items including currency, certificates of deposit, and automobiles worth approximately $650,000. *Id.* Recognizing that a subsequent criminal conviction would constitute punishment, the Fifth Circuit held that the forfeiture did not constitute prior punishment, thus precluding the successive punishment, because the forfeiture of approximately $650,000 in proceeds of illegal drug sales bore a "rational relation to the costs incurred by the government and society resulting from the defendant's criminal conduct." *Id.* at 297–99.

Hence, the Fifth Circuit in *Tilley* found that the civil forfeiture of illegal drug proceeds "serves the wholly remedial purposes of reimbursing the government for the costs of detection, investigation, and prosecution of drug traffickers and reimbursing society for the costs of combatting the allure of illegal drugs, caring for the victims of the criminal trade when preventive efforts prove unsuccessful, lost productivity, etc." *Id.* at 299 (citations omitted). The *Tilley* court estimated that the illegal drug trade produces yearly revenues of approximately $80 to $100 billion while exacting $60 to $120 billion per year in costs from the government and society. *Id.* (citations omitted). Accordingly, *Tilley* reasoned that the forfeiture of approximately $650,000 in illegal drug proceeds was not excessive in comparison to the resulting governmental and societal costs because it "failed to compensate fully for the wrongs done." [4] *Id.*

---

4. In fact, the Fifth Circuit stated that even if drug dealers forfeited their entire proceeds from illegal drug sales, "the relationship between the amount of the proceeds and the resulting governmental and societal costs would not exhibit the excessive quality found in *Halper* and would not be irrational for that reason." *Tilley,* 18 F.3d at 299. Further, the *Tilley* court reasoned that notwithstanding *Halper* 's rational relation test, the

forfeiture of illegal drug proceeds does not constitute punishment because the underlying premise of this test is that civil forfeiture may constitute punishment because it involves the extraction of lawfully derived property whereas in the forfeiture of drug proceeds "the forfeiting party loses nothing to which the law ever entitled him." *Id.* at 300.

In analyzing the Fifth Circuit's decision in *Tilley*, it is important to note that although *Halper* established the methodology of determining when the civil forfeiture of illegal drug proceeds constitutes punishment, the Fifth Circuit recognized that *Halper* did not involve the forfeiture of illegal drug proceeds pursuant to § 881(a)(6). *Tilley*, 18 F.3d at 298. The Fifth Circuit stated "that the sanction in *Halper* did not involve the proceeds from the crimes charged and the fact that the property forfeited in today's case constitutes unlawful proceeds is crucial to our analysis." *Id.* Further, the *Tilley* court reasoned that the Supreme Court's decision in *Austin* did not affect its decision because *Austin* dealt with whether civil forfeiture pursuant to §§ 881(a)(4) and (a)(7) constituted punishment under the Excessive Fines Clause of the Eighth Amendment. *Id.* at 299–300.

The Ninth Circuit, on the other hand, has held that the Supreme Court's decision in *Austin* compels a finding that civil forfeiture pursuant § 881(a)(6) constitutes punishment. *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210, 1221 (9th Cir.1994), *amended and reh'g denied*, 56 F.3d 41 (1995). In *$405,089.23 U.S. Currency*, the United States filed a civil forfeiture complaint pursuant to 21 U.S.C. § 881(a)(6), as well as 18 U.S.C. § 981(a)(1)(A) involving money laundering, against several hundred thousand dollars worth of property including currency, silver bars, a helicopter, two boats, an airplane, and eleven automobiles. *Id.* at 1214. Holding that the Supreme Court's civil forfeiture analysis under the Eighth Amendment's Excessive Fines Clause in *Austin* is equally applicable to the Fifth Amendment's Double Jeopardy Clause,[5] the Ninth Circuit reasoned that the principles established in *Austin*— that forfeiture was historically considered punishment, § 881 encompasses an "innocent owner" defense which focuses on the culpability of the owner in a manner resembling punishment, and the forfeiture is tied directly to the commission of drug offenses—dictates finding that any civil forfeiture pursuant to § 881(a) operates at least in part to punish and deter. *Id.* at 1221.

In determining that civil forfeiture pursuant to § 881(a) is at least partly punitive, the Ninth Circuit found that *Austin* mandates an assessment of "the entire scope of the [forfeiture] statute which the government seeks to employ, rather than to the characteristics of the specific property the government seeks to forfeit." *Id.* at 1220. Accordingly, the Ninth Circuit rejected the Fifth Circuit's approach in *Tilley* of determining whether the particular forfeiture is rationally related to the remedial goal of compensating the United States, as well as society, for the costs expended in the war on drugs. *Id.* "[T]he *Austin* Court," the Ninth Circuit reasoned, "explicitly refused to apply such a case-by-case approach to determining whether a forfeiture constitutes 'punishment.'" *Id.* (citing *Austin*, ——— U.S. at ——— n. 14, 113 S.Ct. at 2812 n. 14).

Hence, there exists a split in the circuits as to the appropriate method of determining whether civil forfeiture pursuant to § 881(a)(6) constitutes punishment within the realm of the Double Jeopardy Clause. The Fifth Circuit, utilizing *Halper*'s rational relation test, focused on the particular civil sanction and its relationship to the remedial purpose of compensating the government and society for the costs of fighting the war on drugs. *Tilley* suggests that these costs are so high that the forfeiture of illegal drug proceeds pursuant to § 881(a)(6) will always be remedial. The Ninth Circuit, however, is persuaded that the Supreme Court's decision in *Austin* compels a statutory analysis as a whole, of the entire forfeiture provisions of § 881(a), rather than an assessment of the civil sanction in any particular case. According to *$405,089.23 U.S. Currency*, this analysis concludes that civil forfeiture pursuant to any subsection of § 881(a) is at least partly punitive and thus, constitutes punishment for purposes of double jeopardy analysis.

 This Court is not persuaded that a civil forfeiture action pursuant to § 881(a)(6) must necessarily constitute punishment because of its alleged punitive nature. Specifically, this Court declines to adopt the Ninth

---

**5.** The Ninth Circuit stated that "[i]n short, if a forfeiture constitutes punishment under the *Hal-*

*per* criteria, it constitutes 'punishment' for purposes of both clauses." 33 F.3d at 1219.

Circuit's view that § 881(a)(6), like its counterparts § 881(a)(4) and (a)(7), serve the punitive purpose of punishing those engaged in drug trafficking. It is clear to this Court that *Halper* compels the application of its rational relation test to determine whether an individual sanction is remedial or punitive, or both. Civil forfeiture sanctions that are not solely remedial are considered to be punishment for double jeopardy analysis. *Halper*, 490 U.S. at 448, 109 S.Ct. at 1902. It is also clear to this Court, that for purposes of the Eighth Amendment's Excessive Fines Clause, civil *in rem* forfeiture pursuant to § 881(a)(4) and (a)(7) serve, at least in part, the punitive purpose of punishment through the forfeiture of any conveyances or real property used to facilitate the drug transaction. —— U.S. at ——, 113 S.Ct. at 2812. Further, a civil sanction in the form of a tax, rather than civil forfeiture, may constitute punishment. *Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1948. This trilogy of decisions dictates that the term "civil forfeiture," despite its nomenclature, may indeed encompass a punitive sanction.

■■■ However, it is not clear to this Court that civil forfeiture of illegal drug proceeds pursuant to § 881(a)(6) must necessarily serve a punitive purpose. Rather, this Court is persuaded by the Fifth Circuit's view that *Halper* requires an examination of the particular case to determine whether the civil sanction bears a "rational relation to the goal of compensating the government for its loss." *Halper*, 490 U.S. at 448, 109 S.Ct. at 1902. The *Tilley* court estimated that the illegal drug trade yields approximately $80 to $100 billion per year but exacts approximately $60 to $120 billion per year in costs from the government and society. The civil forfeiture in this matter was of $5,965,240 in illegal drug proceeds, yet the Defendant is alleged to have conspired to import and distribute cocaine with Columbia's large-scale Medellin cartel.[6] Accordingly, the forfeiture of $5,965,240 is remedial because it "failed to

compensate fully for the wrongs done." *Tilley*, 18 F.3d at 299.[7]

The Court's finding that the forfeiture of illegal drug proceeds pursuant to § 881(a)(6) is remedial is supported by the case law of other circuits. *See United States v. Wild*, 47 F.3d 669, 674 n. 11 (4th Cir.1995) (forfeiture of illegal drug proceeds, in contrast to forfeiture of property neither constituting nor derived from proceeds of an illegal activity, is not punishment covered by the Eighth Amendment's Excessive Fines Clause), *pet. for cert. filed*, (U.S. May 18, 1995) (No. 94–9563); *United States v. $21,282.00 in U.S. Currency*, 47 F.3d 972, 973 (8th Cir.1995) (forfeiture of proceeds of criminal activity which "simply parts the owner from the fruits of the criminal activity" does not constitute punishment under the Eighth Amendment) (citation omitted); *S.E.C. v. Bilzerian*, 29 F.3d 689, 696 (D.C.Cir.1994) (disgorgement order is remedial and not punishment within meaning of Fifth Amendment's Double Jeopardy Clause because it did not ask defendant to give up anything in excess of the amount of his illicit gains). As one circuit has noted, "[t]he reach of the *Halper* decision is short." *Bilzerian*, 29 F.3d at 696. It is a rule for the rare case where a civil sanction is *overwhelmingly disproportionate* to the damages caused by the defendant. *Halper*, 490 U.S. at 448, 109 S.Ct. at 1902. That is truly not the case in this matter.

■■■ Nevertheless, the Court also finds that the Defendant's double jeopardy motion must fail for other reasons as well. The Eleventh Circuit has held that the simultaneous pursuit by the government of criminal and civil sanctions is a single, coordinated prosecution not barred by the Fifth Amendment's Double Jeopardy Clause. *United States v. One Single Family Residence Located at 18755 North Bay Road, Miami*, 13 F.3d 1493, 1499 (11th Cir.1994) (criminal prosecution instigated five months after civil forfeiture proceeding was single, coordinated

---

6. The Court is satisfied that the United States has met its burden of establishing probable cause for the belief that the $5,965,240 is substantially connected to drug dealing. (Govt.Ex. A, E, & F.) *United States v. $121,100.00 in U.S. Currency*, 999 F.2d 1503, 1505 (11th Cir.1993).

7. Further, the Court finds that the instant forfeiture of illegal drug proceeds does not constitute punishment because "it exacts no price in liberty or lawfully derived property" from the Defendant." *Tilley*, 18 F.3d at 300.

prosecution); *United States v. One Parcel of Real Estate Located at 13143 S.W. 15th Lane, Dade County, Miami, Florida,* 872 F.Supp. 968, 972 (S.D.Fla.1994) (civil forfeiture proceeding instigated several months after indictment part of single, coordinated proceeding). *See also United States v. Millan,* 2 F.3d 17, 20 (2d Cir.1993) (criminal prosecution and subsequent civil forfeiture suit filed over four months later was part of single, coordinated prosecution of persons involved in alleged criminal activity), *cert. denied,* —— U.S. ——, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994). *But cf., $405,089.23 U.S. Currency,* 33 F.3d at 1216 (common sense dictates that forfeiture case and a criminal prosecution would constitute the same proceeding only if they were brought in the same indictment and tried at the same time). A successive criminal prosecution or civil forfeiture action is a separate proceeding barred by the Double Jeopardy Clause only when the government acts "abusively by seeking a second punishment because of dissatisfaction with the punishment levied in the first action." *One Single Family Residence Located at 18755 North Bay Road, Miami,* 13 F.3d at 1499; *One Parcel of Real Estate Located at 13143 S.W. 15th Lane, Dade County, Miami, Florida,* 872 F.Supp. at 972. The government's prosecution in this matter, which dates back to 1989, is clearly not an abuse by the government instigated by its dissatisfaction with the civil forfeiture sanction of $5,965,240.[8]

 Further, the Court finds that jeopardy did not attach from the two prior civil forfeiture proceedings. Jeopardy "attaches" in a civil forfeiture proceeding "at the beginning of the hearing, when evidence is first presented to the trier of fact." *United States v. Torres,* 28 F.3d 1463, 1465 (7th Cir.1994) (citing *Crist v. Bretz,* 437 U.S. 28, 31–37, 98 S.Ct. 2156, 2159–61, 57 L.Ed.2d 24 (1978)). Jeopardy does not attach when the defendant does not make a claim and thus, does not become a party to the forfeiture. *Id.* Further, there is no jeopardy when

there is no trial and the property sought to be forfeited is indeed forfeited without opposition. *Id.* In the case *sub judice,* there were actually two civil forfeiture proceedings. The Defendant filed a claim against the $2,417,570 but not the $3,547,670. Regardless, default judgments were entered against both sums of money because the Defendant chose to become a fugitive. Accordingly, no jeopardy attached to these proceedings because the Defendant was not at risk and " 'without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitute double jeopardy.' " *Id.* at 1465 (citing *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1063, 43 L.Ed.2d 265 (1975)).

The principle of double jeopardy "is 'deeply ingrained in ... the Anglo–American system of jurisprudence.' " *$405,089.23 U.S. Currency,* 33 F.3d at 1215. In light of this constitutional prohibition, the Second Circuit Court of Appeals has noted that:

Civil forfeiture was intended by Congress to be a powerful weapon in what has become a bitter and protracted war on drugs. While we have repeatedly cautioned the government that the constitution must never be made a casualty of this war, where, as here, constitutional prohibitions are not implicated, the government is not precluded from employing the full range of statutorily authorized penalties at its disposal.

*Millan,* 2 F.3d at 20. Accordingly, the Court finds that the Defendant should not be able to thwart this statutory prerogative through his flight from justice. To do so, would enable any defendant to use his fugitive status as a means to implicate constitutional prohibitions. Upon indictment, a defendant need only flee and then resurface later, after civil forfeiture, to invoke the protection afforded by the constitution. Under this scenario, the constitution and the American criminal justice system would be the real casualties of the war on drugs. Common

---

8. The Court is not persuaded by the Defendant's argument that *Kurth Ranch* implicitly overrules *One Single Family Residence Located at 18755 North Bay Road, Miami. Kurth Ranch* involved a criminal prosecution, a civil forfeiture, a civil tax assessment, and a bankruptcy proceeding which the Supreme Court arguably considered to be separate proceedings. —— U.S. at ——–——, 114 S.Ct. at 1939–40.

sense mandates this decision. *Cf., $405,-089.23 U.S. Currency,* 56 F.3d at 41 (dissent).

### B. Statute of Limitations

■ The ten count, sixty-seven page superseding indictment in this matter alleges that the Defendant conspired, in violation of 21 U.S.C. § 846 and § 963, to distribute and import cocaine as part of Columbia's large-scale Medellin drug cartel. The Defendant is alleged to have participated in several overt acts in furtherance of this conspiracy in February and March of 1978. However, since the original indictment in this matter was returned on February 24, 1989, the Defendant argues that this prosecution is barred by the applicable five year statute of limitations for conspiracy. *United States v. Gornto,* 792 F.2d 1028, 1033 (11th Cir.1986) (Title 18 U.S.C. § 3282 provides a five year statute of limitations for conspiracy). Although it is impossible to withdraw from a conspiracy once an overt act is committed, a withdrawal may preclude liability for substantive offenses occurring after the withdrawal. *Id.* (citations omitted). Accordingly, since the indictment alleges only that the Defendant participated in several overt acts in furtherance of this conspiracy in February and March of 1978, and he withdrew from the conspiracy in 1981, he argues that the present prosecution is barred.

■ Title 21 U.S.C. § 846 is by its very terms a conspiracy statute that does not require proof of an overt act. *United States v. Shabani,* — U.S. —, —, 115 S.Ct. 382, 384, 130 L.Ed.2d 225 (1994) (language of § 846 does not require that an overt act be committed to further the conspiracy and no such requirement has been inferred from congressional silence in other conspiracy statutes); *United States v. Elledge,* 723 F.2d 864, 866 (11th Cir.1984). Therefore, an indictment satisfies the requirements of the applicable statute of limitations if the government alleges and proves, at trial or pretrial, that the conspiracy continued into the limitations period. *United States v. Butler,* 792

F.2d 1528, 1532 (11th Cir.), *cert. denied,* 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986). The five year statute of limitations for conspiracy begins to run when the defendant effectively withdrawals from the conspiracy. *Id.* (citations omitted). Thus, this prosecution would be barred by the expiration of the statute of limitations if the Defendant effectively withdrew from the alleged conspiracy before February 24, 1984, five years prior to the filing of the original indictment on February 24, 1989.[9] *See Gornto,* 792 F.2d at 1033.

■ Although "a conspirator's participation in a conspiracy is presumed to continue until all activity relating to the conspiracy is ceased," a defendant may demonstrate withdrawal from the conspiracy by establishing: 1) that he has taken affirmative steps to defeat the objectives of the conspiracy, and 2) that he made a reasonable effort to communicate these acts to his co-conspirators or disclosed the scheme to law enforcement authorities. *United States v. Young,* 39 F.3d 1561, 1571 (11th Cir.1994) (citations omitted). The mere cessation of criminal activity is not sufficient to demonstrate a withdrawal from the conspiracy. *Id.* (citation omitted). The determination whether a defendant's actions rise to the level of a withdrawal is appropriate for the jury. *See Gornto,* 792 F.2d at 1033.

■ The Defendant argues that he withdrew from the Medellin drug cartel conspiracy after a falling out with its other members in 1981 over financial matters. (Decl. of Def., Doc. # 1371, at 2.) The Defendant insists that he informed his co-conspirators that he was no longer interested in any further involvement in their activities and consequently, severed all ties with the Medellin drug cartel. (Decl. of Def., Doc. # 1371, at 2.) However, the Court is not persuaded by this self-serving declaration, which is not a sworn affidavit, that the Defendant has either taken affirmative steps to defeat the objectives of the conspiracy or that he made

9. The Court finds that any potential running of the applicable statute of limitation on the superseding indictments in this matter is tolled by the filing of the original indictment because they do not broaden or substantially amend the origi-

nal charges and because the original indictment is still pending and timely. *United States v. Italiano,* 894 F.2d 1280, 1282 (11th Cir.), *cert. denied,* 498 U.S. 896, 111 S.Ct. 246, 112 L.Ed.2d 205 (1990).

a reasonable effort to communicate these affirmative steps to his co-conspirators. In fact, the record reveals that the United States seized $5,965,240 in illegal drug proceeds from nine safety deposit boxes held by the Defendant under an alias on January 11 and October 7, 1988. (Govt.Resp.Ex. E.) The Defendant used a number of various aliases up until his time of arrest to both rent the safety deposit boxes and to elude law enforcement officers. (Govt.Resp.Ex. A, E, & F.) A criminal investigator for the United States Customs Service provided, in a sworn affidavit, that the Defendant financed the importation of several loads of marijuana into the United States between 1981 and 1987, and that the Defendant has not filed any income tax returns since the year 1971. (Govt.Resp.Ex. E at 2.) Even the Defendant's own mother admits that the Defendant has not held a paying job in his entire life, (Govt.Resp.Ex. A at 4), yet he had almost $6 million in cash on hand at a local bank.

Accordingly, the Court cannot find at this time that the Defendant withdrew from the Medellin drug cartel conspiracy before February 24, 1984. Nor is the Court persuaded by Defendant's argument that the indictment alleges multiple conspiracies rather than a single comprehensive conspiracy. The evidence before the Court at this juncture simply does not permit these findings; rather, it would be more appropriate for the jury to determine the scope and duration of the conspiracy as well as whether the Defendant withdrew from the conspiracy in 1981. *United States v. Champion,* 813 F.2d 1154, 1165 (11th Cir.1987) (whether evidence supports finding a single conspiracy is a question of fact for the jury); *Butler,* 792 F.2d at 1532 (government may prove at trial or pretrial that the alleged non-overt-act conspiracy continued into the applicable limitations period); *see Gornto,* 792 F.2d at 1033 (whether a defendant's actions rise to the level of a withdrawal is appropriate for the jury); *United States v. Escobar-Gaviria,* No. 89–29(S3)–Cr–J–16 (M.D.Fla.1989) (Doc. # 762) (motions to dismiss due to running of statute of limitations deferred until trial). Therefore, the Court finds that the Defendant's motion should be denied.

For the foregoing reasons, it is now

ORDERED AND ADJUDGED:

1. That Defendant's motion to dismiss the indictment on the grounds of double jeopardy (Doc. # 1364) is hereby DENIED.

2. That Defendant's motion to dismiss the indictment based on the expiration of the statute of limitations (Doc. # 1365) is hereby DENIED.

3. That Defendant's Motion for Leave to Reply to the Government's Memorandum in Opposition to the Motion to Dismiss on Double Jeopardy Grounds filed July 27, 1995 (Doc. # 1374) is hereby DENIED.

DONE AND ORDERED.